[Docket Entry Nos. 10, 11, 13, 14, 15 and 16]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|   |   |   |
|---|---|---|
| STEVEN JUDE HOFFENBERG, | : | |
| Plaintiff, | : | Civil Action No. 09-4784 (RMB) |
| | : | |
| v. | : | **MEMORANDUM OPINION & ORDER** |
| | : | |
| JEFF GRONDOLSKY et al., | : | |
| Defendants. | : | |

IT APPEARING THAT:

1.      On September 21, 2009, the Clerk docketed Plaintiff's original complaint. See Docket Entry No. 1.  The original complaint, which arrived accompanied by Plaintiff's application to proceed in this matter in forma pauperis, was packed into a 100-page submission, encompassed 371 paragraphs, provided a patchy, hard-to-follow narrative largely consisting of conclusory statements or leaps of logic not amendable to clear undeastanding, and had certain words capitalized, bolded and/or underlined at random.  See id.  The original complaint named, as Defendants in this matter, the following four persons: Jeff Grondolsky, Richard Harbik, Robin Hood and Dr. Sulayman.  See id. at 1-3.

2.      On September 30, 2009, this Court issued a Memorandum Opinion and Order ("September Order") granting Plaintiff in forma pauperis status and dismissing the original complaint, without prejudice, for failure to comply with the requirements of Rules 8, 18 and 20.  See Docket Entry No. 2 (explaining to Plaintiff the shortcomings of his complaint and providing Plaintiff with detailed guidance as to the requirements of Rules 8, 18 and 20).  The Court

directed the Clerk to administratively terminate this matter, subject to reopening in the event Plaintiff submits, within thirty days from the entry of the September Order, Plaintiff's amended complaint complying with the requirements of Rules 8, 18 and 20.[1]  See id.  The Court also directed the Clerk to serve Plaintiff with a blank civil complaint form and urged Plaintiff to utilize the form in order to control the volume and content of his amended pleading.  See id. at 13 and n.2.

3. One week later, Plaintiff -- instead of submitting an amended pleading -- submitted a motion seemingly attempting to assert that he is being denied access to the courts via his prison officials' decision to take possession of Plaintiff's certain legal material.  See Docket Entry No. 3 (document titled "Motion Demanding Meaningful Court Access," hereinafter "Meaningful Access Motion" ).

4. One week after that, the Court dismissed Plaintiff's "Meaningful Access Motion" as moot, on the grounds that Plaintiff's original complaint was dismissed, that the Court could not exercise jurisdiction over a matter having no pleading but just a motion, and that nothing prevented Plaintiff from incorporating his access-to-court challenges in his then-yet-to-be-submitted amended complaint.  See Docket Entry No. 4.

5. However, in response to the Court's dismissal of Plaintiff's "Meaningful Access Motion," Plaintiff -- instead of filing his amended complaint -- filed two more motions.  See Docket Entries Nos. 6 and 7 (documents titled "Motion for Declaratory Relief" and "Motion to

---

[1]  Indeed, in no ambiguous terms, the Court's September Order stated: "if Plaintiff files an amended complaint within 30 days of the date of the entry of this Order, the Court will enter an order directing the Clerk to reopening this matter and will screen Plaintiff's amended complaint for sua sponte dismissal."  Docket Entry No. 2, at 11.

Page 2 of  13

Consolidate the Court's Order Dismissing the Plaintiff's Motion for Meaningful Court Access into Plaintiff's Motion for Declaratory Relief," hereinafter, collectively, "Declaratory Consolidation Motions").

6.    On November 5, 2009, this Court issued another order ("November Order"), which re-explained to Plaintiff the jurisdictional invalidity of Plaintiff's "pleading in motion" process, and extended Plaintiff's time to file an amended complaint. <u>See</u> Docket Entry No. 8.  In no ambiguous terms, the Court re-emphasized to Plaintiff that Plaintiff's amended complaint "should be a clear and concise document complying with the requirements of Rules 8, 18 and 20, as detailed to Plaintiff in the September Order." <u>Id.</u> at 3 and n.3.

7.    On November 17, 2009, the Clerk received Plaintiff's amended complaint, <u>see</u> Docket Entry No. 10, the content of which is detailed <u>infra</u>.  Then, within two weeks, the Clerk received another round of Plaintiff's motions.  Specifically:

a.    On November 20, 2009, the Clerk received Plaintiff's "Second Motion Demanding Meaningful Court Access."  <u>See</u> Docket Entry No. 11 (hereinafter "Second Meaningful Access Motion").  Plaintiff's "Second Meaningful Access Motion" replicated his first "Meaningful Access Motion," short of the word "second" being entered in the title and in the caption.  <u>Compare</u> Docket Entry No. 11 to Docket Entry No. 3 (replicating the same dozen pages).

b.    On November 23, 2009, the Clerk received Plaintiff's letter/motion requesting the Clerk to "mark the docket that the case is reopened," <u>see</u> Docket Entry No. 13 ("Motion to Reopen"), even though the Court's September Order unambiguously clarified to Plaintiff that, upon receipt of Plaintiff's amended complaint, the Court

[would] enter an order directing the Clerk to reopen[] this matter." Docket Entry No.

2, at 11.

c.   On December 1, 2009, the Clerk received another motion from Plaintiff. <u>See</u> Docket

Entry No. 14.  The title of that document read:

> MOTION IN DOCKET(S) (8) AND (13) FOR DECLARATORY
> RELIEF , 28 U.S.C. §2201 ANS §2202, UNDER THE FIRST
> AMENDED COMPLAINT, 12-21-2009, CONSIDERATION
> CAUSED BY THE 9-3-02009 DISMISSAL ORDER IN THIS
> ACTION BY SERIOUS ABUSE OF DISCRETION USED FOR
> THE UNJUST BENEFIT OF THE DEFENDANT PRISON
> EXECUTIVE(S) THAT MUST STOP NOW WITH THE FIRST
> AMENDED COMPLAINT PROCEEDINGS (AND)
> DISCERNEMENTS [SIC.] IN EXHIBIT 1 FROM THE
> PLAINTIFF'S FILED APPLICATION FOR OVERSIGHT OF THE
> JUDICIARY COMMITTEE IN THE UNITED STATES
> CONGRESS IN THIS LAW SUIT BASED THE 9-30-2009
> DISMISSAL ABUSE OF DISCRETION RULING CAUSING
> ONGOING MASSIVE DAMAGE(S) BY THE PRISON
> EXECUTIVE DEFENDANTS' FEDERAL LAW VIOLATIONS.

<u>Id.</u> at 1 ("Discernements Motion").  The 30 pages of this Discernements Motion

replicated, style-wise, Plaintiff's original complaint by providing a patchy, nearly-

impossible-to-follow narrative largely consisting of conclusory statements having

certain words capitalized, bolded and/or underlined at random.  <u>See</u> Docket Entry

No. 14.[2]

8.   Plaintiff's amended complaint presents a copy of Plaintiff's

original complaint (<u>i.e.,</u> the very same 371-paragraph patchy

---

[2] On December 4, 2009, Plaintiff filed a Motion for Declaratory Relief to Consolidate
Docket(s) 13 and 14 Under the Same Judge Bumb Consideration for Allowing the 1st Amended
Complaint to Proceed [Docket No. 15].  On December 10, 2009 , Plaintiff filed an identical
Motion [Docket No. 16].

narrative consisting of conclusory statements, with certain words capitalized, bolded and/or underlined at random) made even less understandable by Plaintiff's numerous handwritten comments entered between the lines and/or on margins.[3] <u>Compare</u> Docket Entry No. 10 to Docket Entry No. 1. Simply put, Plaintiff's amended complaint is even longer, less comprehendible and less in compliance with the requirements of Rules 8 than Plaintiff's original complaint. <u>See</u> Docket Entry No. 10.

9.    Giving Plaintiff the benefit of the doubt, the Court assumes that Plaintiff simply failed to understand -- rather than consciously elected to ignore -- the Court's prior guidance. The Court, therefore, finds it prudent to re-clarify to Plaintiff the pleading requirements.

10.    It is long established that a court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Nonetheless, the Third Circuit has noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. <u>See</u> <u>Burlington Coat Fact. Sec. Litig.</u>, 114 F.3d 1410, 1429 (3d Cir. 1997). Therefore, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. <u>See</u> <u>Nice Sys., Ltd. Sec. Litig.</u>, 135 F. Supp. 2d 551, 565 (D.N.J. 2001). Last year, addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what

---

[3]    In addition, the name of one more Defendant, Tara Moran, is written in the caption. <u>See</u> Docket Entry No. 10, at 1.

pleadings are sufficient to pass muster under Rule 8.  See Phillips v. County of Allegheny,

515 F.3d 224, 230-34 (3d Cir. 2008).  Specifically, the Court of Appeals observed as

follows:

> "While a complaint . . . does not need detailed factual allegations, a
> plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to
> relief' . . . ."  Twombly, 127 S. Ct. at 1964-65 . . . ."[T]he threshold
> requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess
> enough heft to 'sho[w] that the pleader is entitled to relief.'"  Id. at 1966.
> [Hence] "factual allegations must be enough to raise a right to relief above
> the speculative level."  Id. at 1965 & n.3. . . .

Id. at 230-34 (original brackets removed).  This pleading standard was further refined by the

United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

> [In any civil action, t]he pleading standard . . . demands more than an
> unadorned ["]the-defendant-unlawfully-harmed-me["] accusation.
> [Twombly, 550 U.S.] at 555 . . . .  A pleading that offers "labels and
> conclusions" or "a formulaic recitation of the elements of a cause of action
> will not do." [Id.] at 555. [Moreover,] the plausibility standard . . . asks for
> more than a sheer possibility that a defendant has acted unlawfully.  Id.
> [Indeed, even w]here a complaint pleads facts that are "merely consistent
> with" a defendant's liability, [the so-alleging complaint still] "stops short of
> [showing] plausibility of 'entitlement to relief.'"  Id. at 557 (brackets
> omitted). [A fortiori,] the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal conclusions [or
> to t]hreadbare recitals of the elements of a cause of action, supported by
> mere conclusory statements [,i.e., by] legal conclusion[s] couched as a
> factual allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement
> [or] that [defendants] adopted a policy "'because of,' not merely 'in spite of,'
> its adverse effects upon an identifiable group." . . . . [W]e do not reject these
> bald allegations on the ground that they are unrealistic or nonsensical. . . .
> It is the conclusory nature of [these] allegations . . . that disentitles them to
> the presumption of truth. . . . [Finally,] the question [of sufficiency of]
> pleadings does not turn [on] the discovery process.  Twombly, 550 U.S.] at
> 559 . . . . [The plaintiff] is not entitled to discovery [where the complaint
> alleges any of the elements] "generally," [i.e., as] a conclusory allegation
> [since] Rule 8 does not [allow] pleading the bare elements of [the] cause of
> action [and] affix[ing] the label "general allegation" [in hope of developing
> facts through discovery].

Iqbal, 129 S. Ct. at 1949-54.[4]

The Third Circuit observed that Iqbal provided the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[5] which was applied to federal complaints before Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  Since Iqbal, the Third Circuit has required the district courts to conduct, with regard to Rule 8 allegations, the two-part analysis when the district courts are presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  [See Iqbal, 129  S.  Ct.  at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other words, a complaint must do *more than allege the plaintiff's entitlement to relief*.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the *mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'*" Iqbal, [129 S. Ct. at 1949-50 (emphasis supplied)].  This "plausibility" determination will be "a context-specific task that *requires the reviewing court to draw on its judicial experience and common sense*." Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

---

[4]  The Supreme Court's treatment of deducements as to the defendant's "indirect involvement" warrants a separate notice.  There, the Supreme Court reversed the trial court and appellate court's decisions, observing that the plaintiff must plead the facts showing that the defendants *actually partook* in the wrongful conduct.  See Iqbal, 129 S. Ct. at 1944-48.

[5]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

11.     Since Plaintiff's 371-paragraph-plus-dozens-of-new-comments amended complaint fails to comply with the requirements of Rule 8, the amended complaint will be dismissed.[6]   Such dismissal will -- again -- be without prejudice, and Plaintiff will have one final chance to state his claims.   <u>See</u> Plaintiff, however, must submit a *clear and concise* pleading.[7] **Plaintiff cannot keep submitting overly lengthy pleadings, cannot keep recycling his prior submissions and should stop substituting facts for conclusory statements, and should stop his random capitalization, bolding and underlining of words**: submissions made in violation of this guidance will not be entertained.

12.     In additions, two lines of Plaintiff's allegations warrant discussion in this Memorandum Opinion and Order.

a.      One of these lines of allegations seems to be raised in the amended complaint: the best the Court can surmise, Plaintiff aims to assert that Defendants prevented him from obtaining 28 U.S.C. § 2241 habeas relief by "obstructing" Plaintiff's exhaustion of administrative remedies, and such "obstruction" took the form of not responding to Plaintiff's administrative grievances.   This line of allegations -- presuming that the Court is correct in its impression that these allegations were intended to be stated -- will be dismissed with prejudice for failure to state a claim upon which relief can be

---

[6]  The overly obscure and mixed statements jointly composing the amended complaint prevent the Court from establishing whether the content of this pleading might ever be construed as complying with Rules 18 and 20.

[7]  To illustrate, Plaintiff might state, for instance, the following facts: "on such-and-such day, Defendant X walked into my cell and committed such-and-such actions, e.g., hit Plaintiff" but Plaintiff cannot substitute such facts with conclusory statements reading, for example, as follows: "Defendant X conspired with Defendant Y to obstruct Plaintiff's actions."

granted.  In order for a federal prisoner to exhaust his administrative remedies, he must comply with 28 C.F.R. § 542.  See 28 C.F.R. § 542.10.   The BOP's Administrative Remedy Program is a three-tier process available to inmates confined in institutions operated by the BOP who "seek formal review of an issue relating to any aspect of his/her confinement."  28 C.F.R. § 542.10(a). An inmate must attempt to informally resolve the issue by presenting it to staff in a BP-8 form.  See 28 C.F.R. § 542.13.  If the issue is not informally resolved, then the inmate may submit a request for administrative remedy (BP-9) to the Warden.  See 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response may appeal to the Regional Director (BP-10), and an inmate dissatisfied with the Regional Director's decision may appeal to the General Counsel in the Central Office (BP-11).  See 28 C.F.R. § 542.15(a).  Appeal to the General Counsel is the final administrative appeal. Id.  The regulations further provide that the Warden shall respond within 20 calendar days; the Regional Director shall respond within 30 calendar days; and the General Counsel shall respond within 40 calendar days.  See 28 C.F.R. § 542.18.  *And the regulation provides that if the inmate does not receive a response within the time allotted for reply, then the inmate may consider the absence of a response to be a denial at that level*.  See id., see also Sharpe v. Costello, 289 Fed. App'x 475 (3d Cir. 2008).   Since, here, Plaintiff seems to assert that he could not complete his administrative exhaustion because of lack of response(s) at the first and/or second tier of the BOP, Plaintiff's claim is automatically invalidated by the operation of 28 C.F.R. § 542.18.  Indeed, Plaintiff's ability to appeal administratively was ensured

by the mere passage of time and by Plaintiff's due filings of administrative appeals, regardless of whether or not he received any responses from the lower-level administrators. Moreover, even if this Court were to construe Plaintiff's "obstruction of exhaustion" claims as either due process or First Amendment claims, Plaintiff's allegations would, nonetheless, have to be dismissed with prejudice.[8]

b. The other line of allegations, seemingly hinted at in Plaintiff's "Second Meaningful Access Motion," suggests that Plaintiff is under the impression that he has stated an "access to the courts claim" by simply asserting that (i) certain documents were

---

[8]  It is well established that "[p]risoners are not constitutionally entitled to a grievance procedure and the state creation of such a procedure does not create any federal constitutional rights," Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997), and a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable." Stringer v. Bureau of Prisons, 145 Fed. App'x 751, 753 (3d Cir. 2005) (citing Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996)), aff'd, 142 F.3d 430 (3d Cir. 1998). Indeed, the Fourteenth Amendment does not guarantee inmates a right to an investigation or a response from prison officials as to administrative grievances (or to any replies by prison officials to inmates' other complaints or demands of a grievance nature). See, e.g., McGuire v. Forr, 1996 U.S. Dist. LEXIS 3418 at *2, n.1 (E.D. Pa. Mar. 21, 1996), aff'd, 101 F.3d 691 (3d Cir. 1996); see also Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); Brown v. G. P. Dodson, 863 F. Supp. 284, 285 (W.D. Va. 1994). Furthermore, if construed as a First Amendment allegation -- rather than a Fourteenth Amendment one -- an assertion that an official failed to respond to an inmate's grievance fails to state a cognizable claim. See Minnesota State Bd. for Community Colleges v. Knight, 465 U.S. 271, 285 (1984). "Nothing in the First Amendment or in . . . case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals communications." Id.; see also Foraker v. Chaffinch, 501 F.3d 231, 237 (3d Cir. 2007) (pointing out that the courts "have never held . . . that a report of a . . . misconduct . . . constitutes 'petitioning activity'" and citing Hill v. Borough of Kutztown, 455 F.3d 225, 230-32 (3d Cir. 2006)); Bieregu v. Reno, 59 F.3d 1445, 1453 n.3 (3d Cir. 1995) (noting that, "[a]t the founding, the Petition Clause also implied a congressional duty to respond . . . . In the Civil War era, however, Congress enacted rules abolishing the duty to respond, a change later sanctioned by the Supreme Court," and citing, inter alia, Smith v. Arkansas State Highway Employees, 441 U.S. 463, 465 (1979) (per curiam) (the Constitution does not require government "to listen [or] to respond: to citizen petition).

taken from his possession by Defendants, and (ii) such taking automatically yielded a legal claims.  If Plaintiff so intended to assert, Plaintiff's allegations need not be elaborated upon in his re-amended complaint, since these allegations do not state a claim upon which relief can be granted.  The right of access to the courts is an aspect of the First Amendment right to petition.  See McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741  (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights."[9]  Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Hudson v. Palmer, 468 U.S. 517, 523 (1984); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. at 828.  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order

---

[9]  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed). In addition, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense. See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351. Here, Plaintiff's allegations are not being dismissed on the grounds of any taking of Plaintiff's documents (i.e., Plaintiff's inability to access these documents, even if true, has nothing to do with the Court's previous -- or instant -- dismissal of this matter.) Rather, Plaintiff's instant claims are being dismissed on the grounds of Plaintiff's own persistent refusal to submit a clear and concise complaint stating the facts of his claims rather than his self-serving conclusions. Therefore, Plaintiff failed to allege that he suffered an actual injury (within the meaning of the access-to-the-courts claim) as a result of any actions by Defendants.

IT IS, on this **17th** day of **December 2009**,

**ORDERED** that the Clerk shall reopen this matter (for the purposes of the Court's screening of Plaintiff's amended complaint docketed as Docket Entry No. 10) by making a new and separate entry on the docket reading "CIVIL CASE REOPENED"; and it is further

**ORDERED** that Plaintiff's amended complaint is dismissed for failure to meet Rule 8 pleading requirements.  Such dismissal is without prejudice to Plaintiff's filing of a re-amended complaint within 30 days from the date of entry of this Order.  However, Plaintiff's claims based on "obstruction of exhaustion" are dismissed with prejudice and shall not be re-pled; and it is further

**ORDERED** that Plaintiff's motions (docketed as Docket Entries Nos. 11, 13, 14, 15 and 16) are dismissed.  Plaintiff's Second Meaningful Access Motion, Docket Entry No. 11, is construed as a supplement to Plaintiff's amended complaint asserting denial of access to the courts for the purposes of the instant matter; these allegations are dismissed with prejudice and shall not be re-pled.  Plaintiff's Motion to Reopen is dismissed as moot.  Plaintiff's Discernements Motion is construed as a supplement to the amended complaint and dismissed without prejudice to incorporating these claims into Plaintiff's *clear and concise* re-amended complaint; and it is further,

**ORDERED** that the Clerk shall administratively terminate this matter (subject to reopening in the event Plaintiff duly files his re-amended complaint) by making a new and separate entry on the docket reading "CIVIL CASE CLOSED"; and it is finally

**ORDERED** that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Plaintiff regular U.S. mail.

s/Renée Marie Bumb

**RENÉE MARIE BUMB**
**United States District Judge**