UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN JUDE HOFFENBERG, : | |
| : | Civil Action No. 09-4784 (RMB) |
| Plaintiff, : | |
| v. : | **MEMORANDUM OPINION & ORDER** |
| JEFF GRONDOLSKY et al., : | |
| Defendants. : | |

IT APPEARING THAT:

1. On September 21, 2009, the Clerk docketed Plaintiff's complaint in this matter. See Docket Entry No. 1. The complaint consisted of a 100-page submission (encompassing 371 incomprehensible paragraphs), and was accompanied by Plaintiff's application to proceed in this matter in forma pauperis. See id.

2. On September 30, 2009, this Court issued a memorandum opinion and order granting Plaintiff in forma pauperis status and dismissing the complaint, without prejudice, for failure to comply with the requirements of Rules 8, 18 and 20. See Docket Entry No. 2 (explaining to Plaintiff the shortcomings of his complaint and providing Plaintiff with detailed guidance as to the requirements of Rules 8, 18 and 20). The Court also directed the Clerk to administratively terminate this matter, subject to reopening in the event Plaintiff submitted his amended complaint. See id. The Court also directed the Clerk to serve Plaintiff with a blank civil complaint form and *strongly encouraged Plaintiff to utilize the form in order to control the volume and content of his amended pleading*. See id. at 13 and n.2.

3. In response, Plaintiff filed, not an amended complaint, but a host of motions. <u>See</u> Docket Entries Nos. 3, 4, 6 and 7,

4. On October 14, 2009, and November 5, 2009, the Court denied Plaintiff's motions and extended his time to file his amended complaint. <u>See</u> Docket Entries Nos. 4 and 8.

5. On November 16, 2009, Plaintiff filed his amended complaint, accompanied by another host of motions. <u>See</u> Docket Entries Nos. 10, 11, 12, 13, 14, 15 and 16. The amended complaint presented a copy of Plaintiff's original complaint (<u>i.e.</u>, the very same 371-paragraph narrative consisting of conclusory statements) made even less understandable by Plaintiff's numerous handwritten comments entered between the lines and/or on margins. <u>See</u> Docket Entry No. 10.

6. Therefore, on December 17, 2009, the Court issued a memorandum opinion and order dismissing the amended complaint for failure to comply with the requirements of Rules 8, 18 and 20, and denying Plaintiff's second round of motions. <u>See</u> Docket Entry No. 18. Moreover, even though Plaintiff's amended complaint was virtually incomprehensible, the Court deciphered two claims in that complaint and dismissed these claims with prejudice, granting Plaintiff leave to amend as to the remainder of the claims. <u>See</u> <u>id.</u> In the process of addressing Plaintiff's claims, the Court reinterated to Plaintiff the pleading requirements of Rule 8, as explained by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937 (2009), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and by the Court of Appeals in <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009), and <u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008). The Court's order concluded with an unambiguous directive - that Plaintiff's second amended complaint had to be a clear and concise document. <u>See</u> <u>id.</u> at 13.

7. On January 5, 2010, Plaintiff filed his second amended complaint, a 56-page submission consisting of 203 paragraphs, accompanied by 39 pages of exhibits written up by Plaintiff between the lines and on the margins. See Docket Entry No. 20. The relevance of these exhibits to Plaintiff's claims was just as incomprehensible as the content of Plaintiff's second amended complaint, since these 203 paragraphs presented, effectively, a stream of consciousness laden with legal citations. See id.

8. Therefore, on February 23, 2010, this Court issued another memorandum opinion and order dismissing Plaintiff's second amended complaint. See Docket Entry No. 23. However, just as during its dismissal of Plaintiff's first amended complaint, the Court took a guess as to certain claims that the Court could decipher and explained to Plaintiff that these allegations did not state a cognizable claim. Specifically, the Court observed:

> A few claims that the Court might have distilled include: (a) an allegation that Plaintiff was denied access to the courts because Plaintiff cannot present the Court with additional paperwork (since this paperwork was, allegedly, taken from Plaintiff by his prison officials); (b) an allegation that Plaintiff was denied access to the courts because, in a certain medical malpractice action (which Plaintiff seemingly instituted), a certain witness or a certain defendant filed an affidavit, the content of which Plaintiff considered fraudulent; and (c) an allegation that Plaintiff's rights were violated because, for a certain period of time, Plaintiff was moved from the general prison population to solitary confinement. If the Court deciphered these allegations correctly, none of them states a cognizable claim, since prisoners have no due process right in being in general population (unless the solitary confinement is extremely lengthy), see Sandin v. Conner, 515 U.S. 472, 478 (1995); Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Meachum v. Fano, 427 U.S. 215, 224-25(1976), and an allegation that an adversary of a certain litigant defrauds his/her respective tribunal has nothing to do with the access to the courts claim: no provision in the United States Constitution guarantees a litigant that his/her witnesses or adversaries would be truthful during their court proceedings. Cf. Briscoe v. LaHue, 460 U.S. 325, 330-346 (1983) (police officer who testifies in criminal trial enjoys absolute witness immunity for false testimony); Kulwicki v. Dawson, 969 F.2d 1454, 1467 and n.16 (3d Cir. 1992) (witness who testifies in judicial proceeding is absolutely immune for false testimony); Williams v.

> Hepting, 844 F.2d 138, 143 (3d Cir. 1988) (witness is entitled to absolute immunity from civil liability under § 1983 for perjured testimony at preliminary hearing and suppression hearings).  Similarly, Plaintiff's alleged inability to file additional paperwork in this matter (i.e., in the matter where the round of pleadings currently at bar is packed into a 95-page submission, being the shortest package Plaintiff thus far managed to produce) in no way denies Plaintiff access to the courts: Plaintiff, being a pro se litigant, is not required to provide the Court with *any* legal citations or legal memoranda. Moreover, at this initial stage, i.e., at the stage of screening, the Court takes all Plaintiff's allegations as true, without requiring Plaintiff to provide *any* exhibits or factual proof.  Since the Court subjects Plaintiff's pleadings to facial rather than factual review, Plaintiff, in order to state a claim, must merely assert, clearly and concisely, what exactly each defendant did and when, and the specific injury that Plaintiff suffered as a result of these actions. Thus, if this matter is dismissed upon screening, it would be because Plaintiff fails to assert facts stating a claim, not because he cannot produce any evidence or legal citations, etc.

Id. at 3, n.1.

The Court's order concluded with the following unambiguous directive:

> Because the Court is concerned that the filing of yet another amended complaint will result in an equally, if not more, incomprehensible submission, . . . Plaintiff [must] submit a list of legal claims which Plaintiff wishes to assert. After each claim, Plaintiff shall set forth in no more than **one page** the facts he alleges that support such claim.  If he cannot do so in one page, he shall so state his reasons in that **one page**.

Id. at 3-4 (emphasis in original).

9. On March 9, 2010, Plaintiff submitted his third amended complaint . See Docket Entry No. 25.  This latest submission is reduced to 43 pages comprised of 150 paragraphs. See id. In flagrant disregard of this Court's prior order and with adamant ignorance of this Court's guidance as to the requirements of Rule 8 (as clarified in Twombly, Iqbal, Phillips and Fowler), and the requirements of Rules 18 and 20, Plaintiff submitted a stream of unspecific and unrelated generalities reiterating even the claims expressly dismissed by this Court, e.g., Plaintiff's allegation that he is being denied access to the courts with regard to the instant

matter because Plaintiff is lacking documentary evidence and/or paperwork. See id. This Court cannot replicate Plaintiff's third amended complaint in this Memorandum Opinion and Order in its entirety, however, the Court finds it warranted to replicate at least the few first pages as an illustration of Plaintiff's persistent approach to drafting his pleadings. For instance, at the beginning of his third amended complaint, Plaintiff alleges as follows:

> MD Sulayman in the medical deprivation claims. Plaintiff at age 65 is held in federal detention at Fort Dix Prison from March 18, 2008 ongoing. Plaintiff's prison detention is in violation of the constitution, by structural errors in the crimes of AUSA Nardello under prosecutor misconduct, evidenced in [Plaintiff's] ongoing Habeas Corpus proceedings.[1]  . . . Retaliation cover up charged misconduct against Defendants Grondolsky, Herbik, Hood and Moran at Fort Dix Prison started March 18, 2008 and proceeds ongoing to this filing. Retaliation cover up charged misconduct against Grondolsky, Herbik, Hood and Moran with the other unknown B.O.P. Staff Defendants are hereinafter Defendants. MD Sulayman is charged in Bivens constitutional violations in violating the mandatory community standard of care in treating the Plaintiff's injuries 3 three spinal slipped discs, right torn shoulder rotator cup, back hips legs arm ongoing injuries with hypertension high blood pressure with other related Plaintiff's injuries. Said Bivens misconduct started on March 18, 2008 and is ongoing involving other unknown B.O.P. Staff to this filing.  Retaliation cover up charged against the Defendants are caused by the Plaintiff and his wife retention at Devens Medical Prison by the D.O.J. Office of internal affaire attorney Thomas

---

[1] The docket number of Plaintiff's habeas proceedings is, according to Plaintiff, 00-1686 (RWB) (S.D.N.Y.). That matter is a Section 2255 motion, with regard to which relief was denied on October 17, 2000, and that decision was affirmed by the Court of Appeals for the Second Circuit on October 4, 2005 (together with the Second Circuit's dismissal of Plaintiff's numerous motions that Plaintiff proliferates in every action among a multitude of legal matters he instituted). Plaintiff unsuccessfully tried to revive his § 2255 action, earning himself another dismissal from the Southern District of New York, see id., Docket Entry No. 14, and another affirmance of his trial court's decision by the Second Circuit. See id., Docket Entry No. 18. After Plaintiff re-re-appealed denial of his § 2255 application, the Second Circuit again affirmed the decision of Plaintiff's trial court. See id., Docket Entry No. 22. That decision was entered on October 5, 2009. See id. Upon this development, Plaintiff filed another application with the Southern District of New York seeking to reopen his thrice dismissed (and thrice dismissal-affirmed) decade-old matter. It is to this action Plaintiff is referring as his "ongoing" habeas proceedings.

>Hopkins, at the time the Plaintiff was held in detention at Devens Medical Center Prison. Plaintiff was retained by the B.O.P. and D.O.J. to provide evidence in crime(s) by B.O.P. Devens Prison Staff. Retaliation cover up charged against the Defendants are not included in the Bivens constitutional violations charged against Defendant MD Sulayman with the other unknown medical B.O.P. Staff Defendants. Retaliation cover up are charged against the defendants by seizing all of the Plaintiffrs legal papers some 16 cartons of vital evidence documents, required to plead concise claims in this restricted filing. Retaliation cover up are charged against the Defendants in seizing all of the Plaintiff's legal papers from March 18, 2008 ongoing in order to obstruct court access in the Plaintiff litigating against the Devens Medical Center B.O.P. Staff, said seized Plaintiff legal papers are required to file concise claims in this lawsuit. That are impeded by the Defendants. Retaliation cover up by the Defendant are charged in obstructing the Plaintiff from including vital evidence in this filing showing the Plaintiff and his wife substantial assistance provided to the D.O.J. Office of Inspector General Attorney Thomas Hopkins at Devens Medical Center Prison. Government assistance by the Plaintiff turning over to the B.O.P. and D.O.J. vital evidence showing crime(s) by B.O.P. Devens Staff. Retaliation cover up by the Defendant are charged in obstructing the Plaintiff's pleading in this filing with seized vital evidence held by the Defendants, showing the fraud on the Boston Federal Court, by the B.O.P. Medical Director S. Howard at Devens Prison. [This Court] is obstructed from reviewing the Plaintiff's vital evidence needed for concise pleading showing the Devens Medical Center B.O.P. Executive S. Howard fraudulent affirmations filed in the Boston Federal Court. [This Court] is obstructed by the Defendants retaliation cover up in seizing all of the Plaintiff's vital evidence legal papers from March 18, 2008 ongoing to this filing, whereby the Plaintiff is prevented from pleading concise claims. Said Plaintiff's seized vital legal papers evidence shows the Plaintiff's substantial assistance to D.O.J. Office of Inspector General Attorney Thomas Hopkins at Devens Medical Center Prison. In crime(s) by B.O.P. Devens Prison Staff. Retaliation cover up by the Defendants seizure of all the Plaintiff's vital legal papers obstructs Plaintiff's Court access in this filing in concise pleading. Showing the backward looking pleading claims against the Devens Medical Center Prison B.O.P. Officials filing fraudulent S. Howard Medical affirmations in some $300 Million Dollars in filed Boston Federal Court lawsuits against the Devens Medical Center Prison for Medical malpractice with Bivens violation lawsuits.

Docket Entry No. 25, at 2-6.

10. The Court notes its grave concern with Plaintiff's adamant ignorance of this Court's guidance as to the applicable requirements and Plaintiff's equally adamant refusal to comply with this

Court's orders.  Hence, **for this last time**, the Court provides Plaintiff with guidance as to how to plead his claims.  **Plaintiff's failure to comply with this Court's guidance will necessarily result in dismissal of Plaintiff's claim, and that dismissal will be with prejudice**.

11. As this Court has already explained to Plaintiff, time and again, Plaintiff must state the fact describing acts or actions by each particular defendant. The Iqbal Court clarified that a government official sued in his/her individual capacity for alleged constitutionally tortious behavior cannot be held liable on a respondeat superior theory or on the basis of some general link to allegedly responsible individuals or actions.  See Iqbal, 129 S. Ct. at 1948-49 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior . . . . [A] plaintiff must plead that each Government-official defendant, through the official's own actions, has violated the Constitution. . . . [P]urpose rather than knowledge is required to impose [constitutional] liability on . . . an official charged with violations arising from his or her superintendent responsibilities"); accord, e.g., Richards v. Pennsylvania, 196 Fed. App'x 82, 85 (3d Cir. 2006) (the court, in Section 1983 action alleging excessive force in arrest, agreed with a magistrate judge that plaintiff's "failure to allege personal involvement on the part of defendant [who was the deputy warden] proved fatal to [plaintiff's] claims"); Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" in order to be liable) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)); Johnstone v. United States, 980 F. Supp. 148, 151-52 (E.D. Pa. 1997) (court sua sponte dismissed claims against government official

because "there is no indication" that the officer "had any personal involvement in the alleged constitutional deprivations," and plaintiff therefore could not "prove any set of facts that would entitle him to relief against [the officer]"). Thus, while Plaintiff does not have to identify the specific defendant by name, see Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004), Plaintiff must state facts showing that the particular defendant was personally involved in the alleged wrong. For example, a statement "on such-and-such date, I had a bleeding wound and came to ask doctor X for assistance, but doctor X refused to attend my bleeding wound" asserts a fact showing personal involvement by doctor X.

11. Similarly, Plaintiff's claims asserting medical malpractice cannot be raised in this matter (and, in addition, cannot present a litigation duplicative of that initiated in any other court). Plaintiff must assert facts showing that he was denied care for his medical needs, or was denied -- for non-medical reasons -- the specific care already prescribed to him by a medical doctor. See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326(3d Cir. 1987). To prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs. See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). Persistent severe pain qualifies as a serious medical need. A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). "Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2)

delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197.  In contrast, "deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Consequently, all Plaintiff's claims asserting that a doctor, here, Dr. Sulayman" mandatory community standard of care in treating the Plaintiff's injuries," will be dismissed with prejudice.  Dismissal with prejudice means that Plaintiff cannot re-assert these claims in his amended pleadings; Plaintiff's ignorance of this rule would be deemed mockery of the Court and might earn Plaintiff sanctions, if appropriate.

12. That applies with equal force to Plaintiff's claims that he is being denied access to the courts by not having evidence or documents that he, allegedly, needs to state his claims concisely. As this Court has already explained, at the instant pleading state, all Plaintiff's factual allegations are considered true.  Hence, Plaintiff need not produce any evidence, he just needs to state the facts as he remembers these facts in good faith.  Therefore, as this Court already noted, if Plaintiff's instant matter is dismissed for Plaintiff's failure to adhere to the pleading requirements of Rule 8, Plaintiff cannot shift the blame for such dismissal to defendants. Therefore, Plaintiff's claims asserting denial of access to the courts on the grounds of the instant matter are dismissed, and such dismissal is with prejudice, which means that Plaintiff cannot reiterate his claims in his amended pleadings.

13. An analogous analysis applies to Plaintiff's claims asserting denial of access to the courts with regard to actions other than the instant matter. The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances. See Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983). In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. See Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Peterkin v. Jeffes, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988) (chronicling various constitutional sources of the right of access to the courts). In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." The right of access to the courts is not, however, unlimited. "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed). Hence, there is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. … [T]he inmate therefore must go one

step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351. Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury." Id. at 348-55 and n.3; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Whether Plaintiff is complaining of a lost past or future claim, *he must state the merits of the underlying cause of action and its lost remedy*. See Christopher v. Harbury, 536 U.S. 403, 415-18 (2002); Lewis, 518 U.S. at 353 n.3, 354. "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued." Christopher, 536 U.S. at 417 (footnote omitted). The court will then analyze the underlying claim to ensure that "the nature of the underlying claim is more than hope." Id. at 416. Here, Plaintiff asserts denial of access to the courts by citing to his thrice-denied § 2255 application, with regard to which denial the Second Circuit thrice affirmed. Therefore, Plaintiff must state in detail the defendant's role in the alleged denial of access to the court with regard to that § 2255 action, and detail why these defendants' actions caused Plaintiff an unconstitutional loss or imminent danger of such loss.

14. Next, Plaintiff's claims that Defendants are liable for "retaliation cover up" are not cognizable. To state a cognizable retaliation claim, a plaintiff must demonstrate that (a) he

engaged in constitutionally-protected activity; (b) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001); see also Anderson v. Davila, 125 F.3d 148 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999) (cited with approval in Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). Thus, to state a claim for retaliation, a plaintiff must allege "'a chronology of events from which retaliation may be inferred.'" Bendy v. Ocean County Jail, 341 Fed. App'x 799 (3d Cir. 2009) (internal citation omitted). Here, Plaintiff's "retaliation" claims do not specify either the protected activity, or why that activity was the motivating factor driving each particular Defendant's actions, or the relevant timeline of events. Therefore, as drafted, Plaintiff's retaliation claims are subject to dismissal regardless of the fact that Plaintiff repeated the word "retaliation" over one hundred times in his complaint and, in Plaintiff's amended pleadings, such claim must be stated in terms of "who, when, why and what" and not by repeating the word "retaliation."

15. Moreover, Plaintiff cannot keep citing to the claims that might be raised -- or being raised -- by Plaintiff's wife. Since this Court has no evidence or information suggesting that Plaintiff's wife lacks mental capacity to raise her own claims, Plaintiff has no standing to raise claims on her behalf. See Whitmore v. Arkansas, 495 U.S. 149 (1990); DeVetsco v. Horn, 53 F.3d 24, 27 (3d Cir. 1995) (following Whitmore, 495 U.S. 149, 110 S. Ct. 1717, 109 L. Ed. 2d 135, and denying jus tertii standing to the third persons for "failure to sustain their burden of

establishing . . . mental incompetence [or] other disability on the part of [the other litigant]").

16. In light of the foregoing, Plaintiff's third amended complaint will be dismissed. Plaintiff will be allowed **one final opportunity to state his claims. Plaintiff's fourth amended complaint MUST consist of -- AND ONLY OF -- a submission where, on the top of each page, Plaintiff will write the name of each Defendant (or identifying features, if the name is unknown) and follow that name by stating specific facts of what exactly that Defendant did, and when, and what injuries Plaintiff suffered as a result of that action. Plaintiff's discussion of the facts related to any particular Defendant CANNOT exceed one double-spaced page, single sided. Plaintiff's allegations shall consist of facts and only facts, stated simply and clearly, in accordance with Rule 8 requirements. Plaintiff's allegations against all Defendants shall be transactionally related to the allegations against the first Defendant in the list, in accordance with Rules 18 and 20. Plaintiff's failure to adhere to this simple directive, or Plaintiff's recital of the claims dismissed with prejudice, Plaintiff's raising of claims which Plaintiff has no standing to litigate, or Plaintiff's other ignorance of the legal standards as explained to him in this and previous memorandum opinions and orders issued by the Court will be deemed contempt of this Court and will trigger appropriate sanctions. Plaintiff is STRONGLY ENCOURAGED to take this Court's warning.**

IT IS, therefore, on this **27th** day of **April 2010**,

**ORDERED** that the Clerk shall reopen this matter by making a new and separate entry on the docket reading "CIVIL CASE REOPENED"; and it is further

**ORDERED** that Plaintiff's third amended complaint, Docket Entry No. 25, is dismissed for failure to comply with the requirements of Rules 8, 18 and 20, and certain Plaintiff's claims are dismissed (and re-dismissed) with prejudice, as explained in this Memorandum Opinion and Order; and it is further

**ORDERED** that, within thirty days from the date of entry of this Memorandum Opinion and Order, Plaintiff shall file his fourth and last re-amended complaint, constituting his fifth bite at the apple, in accordance wit the guidance provided to Plaintiff herein and in this Court's previous memorandum opinions and orders; and it is further

**ORDERED** that the Clerk shall serve a copy of this Memorandum Opinion and Order upon Plaintiff by certified mail, return receipt requested; and it is finally

**ORDERED** that the Clerk shall administratively terminate this matter, subject to reopening upon timely receipt of Plaintiff's fourth amended complaint, by making a new and separate entry on the docket reading "CIVIL CASE TERMINATED."

                                                s/Renée Marie Bumb
                                                **RENÉE MARIE BUMB**
                                                **United States District Judge**