NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STEVEN JUDE HOFFENBERG, | : | |
| | : | Civil Action No. 09-4784 (RMB) |
| Plaintiff, | : | |
| | : | |
| v. | : | **M E M O R A N D U M   O P I N I O N** |
| | : | |
| JEFF GRONDOLSKY et al., | : | |
| | : | |
| Defendants. | : | |

**Bumb**, District Judge:

This matter comes before the Court upon Steven Jude Hoffenberg's ("Hoffenberg") filing of his fifth round of pleadings, see Docket Entry No. 59. For the reasons detailed below, the pleadings will be dismissed; such dismissal will be with prejudice. In addition, a limited order of preclusion will be entered against Hoffenberg.

During the last year and a half, Hoffenberg initiated three actions in this District. Because this Court Order, accompanying the instant Opinion, imposes limited preclusion as a result of Hoffenberg's frivolous litigation practices, the Court finds it prudent to recite Hoffenberg's litigation activities.

### I.    *Hoffenberg v. Warden of Fort Dix*, Civil Action No. 09-3375

On July 9, 2009, the Clerk received Hoffenberg's petition, submitted pursuant to 28 U.S.C. 2241, see Hoffenberg v. Warden of Fort Dix, Civil Action No. 09-3375 ("Hoffenberg-Habeas") Docket Entry No. 1, which arrived unaccompanied by either his filing fee of $5.00 or his in forma pauperis application. See id. One week later, on July 16, 2009, the Clerk received a letter from

Hoffenberg noting his concern with the fact that he had not received a "reply from Court Clerk's Office" and expressing his opinion that such lack of "reply" must have been indicative of Hoffenberg's prison officials' "obstruction" of his access to his legal mail.  See id., Docket Entry No. 2.  In response, the Clerk forwarded Hoffenberg a copy of the docket sheet in the Hoffenberg-Habeas matter.  See id.  On the next day, that is, on July 17, 2009, the Clerk received Hoffenberg's motion, see id., Docket Entry No. 3, reasserting Hoffenberg's claim that the warden at Hoffenberg's place of confinement must have been "obstructing" his access to legal mail because Hoffenberg had not received any correspondence from the Court during the whole eight days of the pendency of the Hoffenberg-Habeas matter.  See id., Docket Entry No. 3, at 1.  Hoffenberg, therefore, requested that all correspondence to him be mailed by "special mail," although he did not clarify his meaning of the term "special mail."[1]  See, generally, id., Docket Entry No. 3.

Addressing Hoffenberg's challenges asserted in Hoffenberg-Habeas, this Court noted that Hoffenberg pled guilty – and was sentenced  – in the United States District Court for the Southern District of New York ("SDNY").  See Hoffenberg v. United States, 436 F. Supp. 2d 609, 2006 U.S. Dist. LEXIS 42222 (S.D.N.Y. 2006).  The SDNY summarized Petitioner's underlying criminal proceedings as follows:

> From 1974 until April 1993, Hoffenberg served as the chief executive officer, president, and chairman of the board of Towers Financial Corporation ("TFC").  In February 1993, following a lengthy investigation, the Securities and Exchange Commission ("SEC") filed suit against Hoffenberg, TFC, and other TFC officials for, among other things, securities fraud through the circulation of false and misleading financial statements to investors regarding TFC's financial condition.  Soon

---

[1]  Hoffenberg's motion, in addition to asserting that the warden was obstructing Petitioner's access to his legal mail and requesting unspecified "special mailing" by this Court, see Hoffenberg-Habeas, Docket Entry No. 3, at 1-4, sought this Court's orders directing intervention by the United States Attorney General.  See id. at 3.

thereafter, in March 1993, TFC filed for bankruptcy. The collapse of TFC resulted in losses to investors totaling hundreds of millions of dollars. On April 19, 1994, Hoffenberg was indicted in the Northern District of Illinois on various fraud charges, including mail fraud. On April 20, 1994, Hoffenberg was indicted in the [SDNY] on numerous charges related to the SEC investigation and lawsuit, including mail fraud, securities fraud in connection with the sale of notes and bonds of TFC, unlawful conspiracy, and obstruction of justice. . . . The indictment pending in the Northern District of Illinois was transferred to the [SDNY]. On April 20, 1995, Hoffenberg pled guilty to four counts of a superseding information related to the April 20, 1994 indictment: (I) conspiracy to violate the securities laws by fraudulently selling securities . . . ; (ii) mail fraud . . . ; (iii) conspiracy to obstruct justice . . . ; and (iv) tax evasion . . . . Hoffenberg also pled guilty to one count of the indictment transferred from the Northern District of Illinois: mail fraud . . . . On March 7, 1997, [the SDNY] sentenced Hoffenberg to twenty years' imprisonment, followed by a three-year term of supervised release, as well as a $ 1 million fine, approximately $ 475 million in restitution, and a $ 50 special assessment on each of the five counts. Hoffenberg appealed his criminal conviction and sentence and on September 22, 1998 the Second Circuit affirmed the conviction and sentence. Hoffenberg filed a petition for rehearing and a petition for rehearing en banc, which the Second Circuit denied in a January 15, 1999 order. Hoffenberg is currently incarcerated and serving his sentence.

Id. at *2-5 (citations omitted).

The petition in Hoffenberg-Habeas presented a potpourri of challenges in the sense that some statements made in Hoffenberg's petition were "pegged" to the events underlying his criminal conviction, while other statements presented considerations relevant to habeas applications, with the remaining challenges seemingly aiming to assert civil rights claims. Specifically, for his habeas-like line of challenges, Hoffenberg qualified himself as an "elderly person" on the grounds that he turned 65. See id., Docket Entry No. 1, at 2. He, therefore, believed that he had to be transferred from his current place of confinement at Fort Dix (and from being incarcerated in "a" federal correctional institution, in general) to home confinement for the remainder of his sentence, under the Second Chance Act, even though he served only thirteen and one half years of his twenty-year prison sentence, and the Second Chance Act allows consideration of home confinement for persons over

65 who served *the greater period* between the period of 10 years and 75% of their imposed term. See id..  In his line of challenges "pegged" to his criminal conviction, Hoffenberg asserted that the very fact of his confinement in Fort Dix was illegal because it prevented collection of the restitution ordered in Hoffenberg's underlying criminal matter.  See id. at 3.  According to Hoffenberg's petition, the warden of Fort Dix "issued a number of written communication(s) stating that [the prison officials] will not comply with [the] restitution and fine court orders."[2]  Id. (capitalization, bolding and underlining removed, alternative plural in original).  From this statement, the Court gathered that Hoffenberg was trying to assert that the warden was acting in contempt of Petitioner's sentencing court.

In addition to the foregoing, Hoffenberg's petition contained a phrase reading, "obstruction of [Petitioner's] court access ongoing," id. at 4 (capitalization, bolding and underlining removed), and referred to an "exhibit 2," which – however – was not included in Hoffenbeg's submission.  See id.  In addition, the "Statement of Facts" section in Hoffenberg's petition concluded with the following phrase: "Leave to amend this motion into a civil rights litigation for jury trial under 28 U.S.C. § 1331 jurisdiction Federal Civil Rule 15 Foman v. Davis 9 L.Ed. 2d 222 (1962)."  Id. at 5 (capitalization, bolding and underlining removed).  Finally, the last page of the petition stated: "Should this Respondent seek to litigate this simple request for consideration of home detention, this . . . Court is requested to grant leave to amend this action.  This . . . Court is requested to order this Petitioner to amend this action under Federal Civil Rule 15, Foman v. Davis 9 L.Ed. 2d 222 (1962),

---

[2] Hoffenberg's petition also notes Hoffenberg's impression that the Attorney General of the United States "had interactions" with the warden about the restitution issue and that some unidentified United States senators and "members of the Judiciary Committee" are involved in the matter.  See Docket Entry No. 1, at 4.

into the Petitioner[']s civil rights action, under 28 U.S.C. § 1331 federal question jurisdiction. Order leave for the Petitioner to amend this action under Federal Civil Rule 15 into the Petitioner[']s civil rights action, 28 U.S.C. § 1331 federal question, <u>Bivens</u>, B.O.P. staff violations of scope of employment, ongoing staff liability, jury trial." <u>Id.</u> at 5  (capitalization, bolding and underlining removed).  The totality of these statements suggested Hoffenberg's interest in pursuing civil rights challenges.

In response to this panoply of poorly articulated claims, this Court issued a memorandum opinion and order dated August 31, 2009. <u>See</u> <u>Hoffenberg-Habeas</u>, Docket Entry No. 4.  The Court dismissed Hoffenberg's Second Chance Act challenges as unexhausted[3] and pointed out that Hoffenberg's civil rights challenges, such as access to the courts claims, should be brought in a separate civil action by means of filing a civil complaint rather than a habeas petition.  The Court, therefore, dismissed such potential civil rights challenges also without prejudice, leaving an avenue for Hoffenberg to litigate these matters in good faith.[4]

---

[3]  The Court noted its impression that Hoffenberg might be ineligible for the requested habeas relief since he had served less than 75% of his twenty-year sentence.  However, because this Court had no information about Hoffenberg's good-conduct credit or pre-conviction confinement, or similar factors that might render Hoffenberg's already-served period of confinement equal to 75% of his sentence, the Court – out of abundance of caution – entered no conclusive opinion as to whether Hoffenberg was eligible for consideration under Section 17541(g).

[4]  The Court also explained that it would neither direct intervention by  the United States Attorney General (since the decision whether to intervene is for the United States Attorney General to make) nor would it deem the United States Attorney General an indispensable party to this litigation.  Hoffenberg's claims that his warden was in contempt of Hoffenberg's sentencing court's order directing restitution were dismissed for lack of habeas jurisdiction as not affecting Hoffenberg's term of confinement.  In addition, the Court explained that it would not direct the warden to deduct any funds from Hoffenberg's account, since it was Hoffenberg's duty to either submit his filing fee or a certified <u>in</u> <u>forma</u> <u>pauperis</u> application qualifying Hoffenberg to proceed in this matter as a pauper, but the Court would direct the Clerk to provide

II.    **Instant Action:** *Hoffenberg v. Grondolsky*, **Civil Action No. 09-4784**

   A.    **Procedural History**

Seemingly in response to the Court's order issued in <u>Hoffenberg-Habeas</u>, Hoffenberg initiated the instant matter on September 21, 2009, by submitting his civil complaint. <u>See</u> Docket Entry No. 1.[5] The complaint, packed into a 100-page submission (and encompassing 371 virtually incomprehensible paragraphs heavily peppered by bolding, capitalization and underlining), arrived accompanied by Hoffenberg's application to proceed in this matter <u>in forma pauperis</u>. <u>See id.</u>

On September 30, 2009, this Court issued a memorandum opinion and order granting Hoffenberg <u>in forma pauperis</u> status and dismissing the complaint, without prejudice, for failure to comply with the requirements of Rules 8, 18 and 20. <u>See</u> Docket Entry No. 2 (explaining to Plaintiff the shortcomings of his complaint and providing Plaintiff with detailed guidance as to the requirements of Rules 8, 18 and 20). The Court directed the Clerk to administratively terminate this matter, subject to reopening in the event Hoffenberg submitted an amended complaint complying with requirements of the aforesaid Rules of Civil Procedure. <u>See id.</u> The Court also directed the Clerk to serve Plaintiff with a blank civil complaint form and strongly encouraged Plaintiff to utilize the form in order to control the volume and content of Hoffenberg's amended pleading. <u>See id.</u> at 13 and n.2.

Hoffenberg thereafter filed a trio of voluminous motions. <u>See</u> Docket Entries Nos. 3, 6 and

---

Hoffenberg with a blank <u>in forma pauperis</u> application for <u>habeas</u> litigants and for civil complaint filers: to facilitate Hoffenberg's endeavors to that effect. Hoffenberg never paid his filing fee of $5.00 (nor did he submit his <u>in forma pauperis</u> application) in <u>Hoffenberg-Habeas</u>.

   [5] References to docket entries in this matter are made without indication of the action; hence, a reference to "Docket Entry No. XX" shall be construed as a reference to the docket entry No. "XX" in this matter.

7.  Specifically, Hoffenberg filed: (a) a "motion for meaningful court access," <u>see</u> Docket Entry No. 3 (a 12-page 37-paragraph production, with some paragraphs consisting of four sub-paragraphs, expressing Hoffenberg's displeasures with his prison officials); (b) a "motion for declaratory relief," <u>see</u> Docket Entry No. 6 (a 20-page, 111-paragraph production expressing Hoffenberg's displeasures with the current state of law, this Court's order directing Hoffenberg to comply with the requirements of the Rules of Civil Procedure, the fact of the appointment of Hoffenberg's warden, the actions and inactions of the government officials situated at the Washington, D.C., etc.); and (c) a "motion to consolidate," <u>see</u> Docket Entry No. 7 (a six-page production demanding "consolidation" with his "motion for declaratory relief").

On October 14, 2009, and November 5, 2009, the Court denied these motions, and extended its time to file an amended complaint.  The Court left the matter in administrative termination subject to reopening upon timely receipt of the amended complaint complying with the requirements of the Federal Rules of Civil Procedure.  <u>See</u> Docket Entries Nos. 4 and 8.

On November 16, 2009, Hoffenberg filed his first amended complaint, accompanied by another set of motions.  <u>See</u> Docket Entries Nos. 10, 11, 12, 13, 14, 15 and 16.  Specifically, Hoffenberg filed: (a) another "motion for meaningful court access," <u>see</u> Docket Entry No. 11 (repeating the same 12-page 37-paragraph production, with some paragraphs consisting of four sub-paragraphs, expressing Hoffenberg's displeasures with his prison officials); (b) a repeat of same, one more time, <u>see</u> Docket Entry No. 12; (c) a "motion to correct docket" which the Court understood to read that the case was reopened, even though there was no determination by this Court as to the timeliness of content of Hoffenberg's amended complaint, <u>see</u> Docket Entry No. 13; (d) a "motion to reopen the case and serve [the process]," <u>see</u> Docket Entry No. 14 (a 30-page production

consisting of a 21-paragraph repeat of virtually the same, a page of Hoffenberg's self-praise declaring him to be the savior of the New York Post newspaper and promising a book to that extent, a repeat of Hoffenberg's prior motion for "declaratory relief," etc.); (e) a "motion for declaratory relief to consolidate docket entries," see Docket Entry No. 15 (a seven-page production rehashing the same); and (f) another "motion for declaratory relief to consolidate docket entries," see Docket Entry No. 16 (one more repeat of the same).   In addition to the aforesaid flock of motions addressed to this Court, Hoffenberg also filed a letter directing the Clerk to "consolidate" docket entries, even though the Court had not issued an order to that effect.  See Docket Entry No. 17.

The amended complaint  presented a copy of Hoffenberg's original complaint (i.e., the very same 371-paragraph patchy narrative consisting of conclusory statements) made even less understandable by Hoffenberg's numerous handwritten comments entered between the lines and/or on margins. See Docket Entry No. 10.

Therefore, on December 17, 2009, the Court issued another memorandum opinion and order dismissing the first amended complaint for failure to comply with the requirements of Rules 8, 18 and 20 (and addressing Hoffenberg's second round of motions).  See Docket Entry No. 18. Moreover, even though Hoffenberg's amended complaint was virtually incomprehensible, the Court deciphered two claims in that complaint, explained to Hoffenberg the applicable substantive tests and the facial invalidity of these deciphered challenges and dismissed those claims with prejudice. The Court granted Hoffenberg leave to amend the remainder of his first amended complaint by filing his second amended complaint that would comply with the requirements of Rule 8.  See id.  In the process of addressing Hoffenberg's claims, the Court detailed again to Hoffenberg the pleading requirements of Rule 8, as explained by the Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937

(2009), and <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007), and by the Court of Appeals in <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203 (3d Cir. 2009), and <u>Phillips v. County of Allegheny</u>, 515 F.3d 224 (3d Cir. 2008).  The Court stressed that Hoffenberg's allegations had to be factual, and that they could not be self-serving conclusory statements or recitals of elements of claims.  The Court's order ended with an unambiguous directive that Hoffenberg's second amended complaint had to be a clear and concise document.  <u>See</u> <u>id.</u> at 18.

On January 5, 2010, Hoffenberg filed his second amended complaint,[6] a 56-page production consisting of 203 paragraphs, accompanied by 39 pages of exhibits written up by Hoffenberg between the lines and on the margins.  <u>See</u> Docket Entry No. 20.  The relevance of these exhibits to Hoffenberg's claims was just as incomprehensible as the content of Hoffenberg's second amended complaint, since these 203 paragraphs presented, effectively, a stream of consciousness laden with legal citations.  <u>See</u> <u>id.</u>  Therefore, on February 23, 2010, this Court issued one more memorandum opinion and order dismissing Hoffenberg's second amended complaint.  <u>See</u> Docket Entry No. 23. Same as during its dismissal of Hoffenberg's first amended complaint, the Court took its best guess as to certain claims that the Court could decipher from the content of Hoffenberg's submission and explained to Hoffenberg that these allegations, if discerned correctly, did not state a cognizable claim.  <u>See</u> <u>id.</u> at 3, n.1 (explaining non-viability of Hoffenberg's access-to-the-courts claims and

---

[6]  This second amended complaint was: (a) preluded by Hoffenberg's filing of a letter informing the Clerk that Hoffenberg was filing such second amended complaint but omitting to enclose that very document: and (b) followed by two letters from Hoffenberg, one demanding a stamped copy of his submission and another inquiring as to the status of this case, expressing Hoffenberg's displeasure with his need to wait for the whole five weeks passed from the date of his submission of his second amended complaint, and notifying this Court that the instant matter needed special attention because, in Hoffenberg's opinion, it was a "high-profile law suit."  <u>See</u> Docket Entries Nos. 19, 21 and 22.

allegations based on Hoffenberg's placement in segregated confinement and alleged fraudulent court testimony of certain witnesses).  The Court's order concluded with the following unambiguous directive:

> Because the Court is concerned that the filing of yet another amended complaint will result in an equally, if not more, incomprehensible submission, . . . Hoffenberg [must] submit a list of legal claims which Hoffenberg wishes to assert.  After each claim, Hoffenberg shall set forth in no more than one page the facts he alleges that support such claim.  If he cannot do so in one page, he shall so state his reasons in that one page.

Id. at 3-4 (emphasis removed).

On March 9, 2010, Hoffenberg submitted his third amended complaint (which represented Hoffenberg's fourth attempt).  See Docket Entry No. 25.  In flagrant disregard of this Court's prior directive, Hoffenberg  presented a 43-page compilation filled with a total of 150 paragraphs.  See id.  The content of these 150 paragraphs was even more concerning: with adamant ignorance of this Court's guidance as to the requirements of Rule 8 (as clarified in Twombly, Iqbal, Phillips and Fowler), and the requirements of Rules 18 and 20, Hoffenberg's third amended complaint was not just a stream of unspecific and unrelated generalities but it also reiterated the very claims that were already expressly dismissed by this Court.  See id.

Therefore, on April 27, 2010, this Court issued another memorandum opinion and order replicating an extensive excerpt from the "stream of consciousness" narratives comprising Hoffenberg's third amended complaint and noted the Court's grave concern with Hoffenberg's adamant ignorance of this Court's guidance as to the applicable requirements and Hoffenberg's refusal to comply with this Court's orders.  In no ambiguous terms, the Court explained to Hoffenberg (stressing that this explanation was given for the last time) how to plead his claims by asserting facts, and facts only, in a clear and concise statement; the Court stressed that Hoffenberg's

failure to comply with this Court's guidance would result in dismissal of Hoffenberg's claims with

prejudice.  See Docket Entry No. 26.  For the last time, Hoffenberg was granted leave to file one

more amended complaint; that leave was given in the following terms:

> Plaintiff's fourth amended complaint MUST consist of -- AND ONLY OF -- a submission where, on the top of each page, [Hoffenberg] will write the name of each Defendant (or identifying features, if the name is unknown) and follow that name by stating specific facts of what exactly that Defendant did, and when, and what injuries [Hoffenberg] suffered as a result of that action.  [Hoffenberg's] discussion of the facts related to any particular Defendant CANNOT exceed one double-spaced page, single sided.  [Hoffenberg's] allegations shall consist of facts and only facts, stated simply and clearly, in accordance with Rule 8 requirements.  [Hoffenberg's] allegations against all Defendants shall be transactionally related to the allegations against the first Defendant in the list, in accordance with Rules 18 and 20. [Hoffenberg's] failure to adhere to this simple directive, or [Hoffenberg's] recital of the claims dismissed with prejudice [in the Court's opinions addressing his second and third amended complaints, or Hoffenberg's] raising of claims which [Hoffenberg] has no standing to litigate [pursuant to the explanations already provided to him by this Court, or Hoffenberg's] other ignorance of the legal standards as explained to him in this and previous memorandum opinions and orders issued by the Court will be deemed contempt of this Court and will trigger appropriate sanctions.  [Hoffenberg] is STRONGLY ENCOURAGED to take this Court's warning seriously.

Id. at 13 (capitalization in original).

As noted supra, this Court's memorandum opinion and order dismissing Hoffenberg's third

amended complaint and granting him leave to file his fifth round of pleadings was issued on April

27, 2010.  See id.

Hoffenberg's fourth amended complaint was filed eight months later, with 33 docket entries

separating the Court's aforesaid order and Hoffenberg's filing of his pleadings.  These 33 entries

reflected Hoffenberg's litigation endeavors which, in light of the content of his latest amended

complaint, are indicative of nothing but his intent to abuse the legal process availed to him.

Specifically, in response to the Court's memorandum opinion and order directing his filing

of the fifth round of pleadings, Hoffenberg did not file an amended complaint; rather, he made the following filings:

a.  First, his motion to "disqualify" this Court, a seven-page submission opening with the statement "motion seeking disqualification of [this Court for] deliberate abuse of sound judicial discretion [and] causing massive prejudice to [Hoffenberg] with his state pension fund(s) restitution victim(s) investment repayment(s) by [Hoffenberg] in this lawsuit under the March 2010 United States Congress Ethic(s) Committee approval in restitution [Hoffenberg] payment(s) intervention by the United States Congress Judiciary Committee . . . causing [Hoffenberg] prejudice in payment of some (7) seven court ordered restitution obligation(s) in the amount of some one billion dollars to [Hoffenberg] restitution victim(s) state pension fund(s) with other restitution securities . . . ." Docket Entry No. 29 (effectively asserting that this Court's demand for a clear and concise pleading denied Hoffenberg "meaningful access to the courts" and an opportunity to repay "billion dollars" to the victims of his fraud that underlies his criminal conviction and threatening this Court with a wrath of congressional officials allegedly supporting Hoffenberg).

b.  Then, Hoffenberg filed his notice of appeal with regard to this Court's order dismissing Hoffenberg's third amended complaint without prejudice. <u>See</u> Docket Entry No. 30. (This appeal was later withdrawn by Hoffenberg, <u>see</u> Docket Entry No. 40; it seems that Hoffenberg's withdrawal was made in response to the Court of Appeals' order informing Hoffenberg that his appeal was to be considered for dismissal as legally frivolous, <u>see</u> Docket Entry No. 47. Hoffenberg's appeal was eventually dismissed as taken from an interlocutory decision not ripening this matter for appeal. <u>See</u> Docket Entry No. 51.)

c.      The next filing was Hoffenberg's "exhibit" to his motion seeking "disqualification" of this Court, see Docket Entry No. 33 (filed after Hoffenberg's notice of appeal and, moreover, after this Court's denial of Hoffenberg's motion for "disqualification" of this Court).  This "exhibit" consisted of a letter allegedly sent by Hoffenberg to Congressman John Conyers (representing the 14th Congressional District of the State of Michigan) requesting the Congressman's order to release Hoffenberg from confinement.  See id.

d.      The following filing was Hoffenberg's motion requesting "due process," see Docket Entry No. 34, and opening with the sentence reading, "motion . . . to disqualify [this Court because] the Ethic(s) Committee, in the United States Congress, approved [Congressman] John Conyers application, on the Judiciary Committee, to act, with [Hoffenberg's] restitution repayment(s) to major spate pension funds . . . causing [Hoffenberg's] need[] to file paper(s), in front of the Magistrate J [assigned to this action], discerning [this Court's] major damage to [Hoffenberg's] restitution repayment(s) with the related [Hoffenberg's] serious prejudice [in the form of this Court's demanding Hoffenberg's compliance with the requirements of the Federal Rules of Civil Procedure]   showing the vital [this Court's] conflict with statute(s), well settled law and the Constitution." [7]  Id. at 1.

e.      Then followed another one of Hoffenberg's motion for "declaratory relief," see Docket Entry No. 36, seeking an order from this Court directing the Associated Press Agency to interview

_____

    [7]  This "motion" referred the Court to Hoffenberg's exhibit replicating, allegedly, Congressman Conyers' application to the Judiciary Committee.  The so-referred "exhibit" consists solely of Hoffenberg's phrase "to be filed within days."  No such filing was ever made by Hoffenberg, and this Court is not aware of any application to that effect made by any government official, at any level.  Simply put, Hoffenberg's "due process" motion appears to present an outright fraud on this Court.

Hoffenberg.

f.    The next filing was Hoffenberg's motion for reconsideration of this Court's orders denying Hoffenberg's motions for "disqualification" of this Court, see Docket Entry No. 41, accusing this Court of fabricating and filing of Hoffenberg's notice of appeal from this Court's own interlocutory decision.  See id.

g.    The next filing was Hoffenberg's letter to the Clerk scolding the Clerk for not marking the mailings to Hoffenberg with the writing "SPECIAL MAIL" and demanding such inscriptions on all mailings to Hoffenberg on the alleged grounds that the Clerk's failure to so mark results in "unjust prejudice" to Hoffenberg.  See Docket Entry No. 39.

h.    Then followed another one of  Hoffenberg's "motion for declaratory relief," see Docket Entry No. 42, again seeking "disqualification" of this Court for "violations of well settled law."

I.    Hoffenberg also filed a motion to "produce all court public information documents that name [this Court] in any part therein."  See Docket Entry No. 45.

j.    Hoffenberg thereafter filed his motion for reconsideration of this Court's order denying the prior motion, see Docket Entry No. 48, and asserting, mysteriously enough, that this Court "hung her hat" on Venen v. Sweet, 758 F.2d 117 (3d Cir. 1985).

k.    Following that, Hoffenberg filed another letter to the Clerk, requesting a copy of the docket sheet and reminding the Clerk to mark all mailings to Hoffenberg with the writing "SPECIAL MAIL."  See Docket Entry No. 49.

This massive chain of motions and letters from Hoffenberg (and this Court's need for examination of the same, see Docket Entries Nos. 32, 35, 37, 43, 44, 46 and 50 (the Court's

decisions addressing these motions)) ended – five months later – upon the Court of Appeals' above-noted dismissal of Hoffenberg's appeal for lack of jurisdiction.  Upon such dismissal, this Court – giving Hoffenberg the last benefit of the doubt – issued an order allowing Hoffenberg another thirty days to file his fifth round of pleadings (which, at that time, still remained unfiled: five months after leave to file such amended pleading was granted).  See Docket Entry No. 52.

In response, Hoffenberg requested an additional sixty days to prepare his fifth round of pleadings.  See Docket Entry No. 55.  Out of an abundance of caution, this Court granted Hoffenberg a lengthy extension, ninety days.  See Docket Entry No. 56.

In response to the Court's guidance and extensions, Hoffenberg submitted his fourth amended complaint ("Complaint"), that is, the set of pleadings at bar, see Docket Entry No. 59, a sixty-page production consisting of the following parts:

1.  a 150-paragraph "complaint-like" document, the beginning of which is sufficiently depictive of the entirety of this part of his submission.  The first half dozen of pages reads:

> Introduction in the instant 4th amended complaint filed against Defendants [this Court] in prospective injunctive relief that must prevent any further egregious manifest constitutional error. . . by ongoing [this Court's] retaliation by BOP staff [namely, the former and current warden of Hoffenberg's place of confinement and other prison and BOP officials] with other BOP staff acting on misconduct unconstitutional wanton malice Bivens violations harming [Hoffenberg] including Bivens unconstitutional acts by . . . denial of medical treatment . . . .  The Honorable John Conyers Jr. Chairman of the Judiciary Committee, United States Congress House, acted in the claim(s) in this lawsuit . . . .  The United States Congress, House of Representatives, ethic(s) committee, voted for . . . Judiciary Committee action, in March 2010, in [Hoffenberg's] instant claims.  The Honorable Eric Holder Jr, Attorney General of the United States, with the White House counsel Robert Bauer, are in the loop in [Hoffenberg's] claim(s) . . . .  The Associated Press mass media, with other media outlet(s), are covering the plaintiff claim(s) . . . .  FBI agents, from the Newark, New Jersey FBI office, are in the loop [of Hoffenberg's] claim(s).  The Horonable John Conyers Jr., on the Judiciary Committee, United States Congress, did act [on

Hoffenberg's] claims(s). Towers Investors Dot Com restitution victim(s), are acting [on Hoffenberg's] claim(s). The Towers Investors Dot Com victims are acting with the White House counsel Robert Bauer, the United States Congress member(s), and the United States Department of Justice on [Hoffenberg's] claim(s). The Towers Investor victim(s), are providing mass media interview(s) ongoing. [Hoffenberg] is providing mass media communication(s) ongoing. The Honorable John Conyers Jr, want(s) [[Hoffenberg]] to act, and repay [Hoffenberg's] restitution victim, the Detroit police and fire pension fund, $50 million dollars, in [Hoffenberg's]federal court ordered restitution. [Hoffenberg's prior amended complaint] are incorporated and consolidated in this 4th amended complaint. United States Court of Appeals Third Circuit remanded this case [to this Court] for the filing by [Hoffenberg] of the 4th amended complaint.[8 This Court] is charged below, as a defendant in prospective injunctive relief, mandated in the . . . egregious manifest constitutional error, deliberate ongoing abuse of discretion, in this 4th amended complaint, by [this Court] unconstitutional wanton malice, judicial misconduct set forth below. [This Court] is a named defendant, in this 4th amended complaint, under [this Court] egregious manifest constitutional error, that mandates [this Court] to order [Hoffenberg's] right to litigate his denied court access claim(s), against the defendants in this complaint. Prospective injunctive relief, charged below against [this Court. This Court] is a named defendant, in this 4th amended complaint, under [this Court] prospective mandated injunctive relief, mandating that this 4th amended complaint, must allow [Hoffenberg] to litigate, his claims against the defendant(s), in the denial of court access ongoing, discerned below retaliation. In addition [Hoffenberg's] claims showing ongoing denial of [Hoffenberg's] medical treatment. . . , unconstitutional <u>Bivens</u> wanton acts in malice, harming ongoing, must be ordered by [this Court] prospective injunctive relief, in this 4th amended complaint denial of medical care. [This Court] prospective injunctive relief charged below, mandated that [this Court] prospective judicial conduct, must comply with well settled federal law and statutes, discerned below.

<u>See</u> <u>id.</u> at 1-6 (the first 18 out of 150 paragraphs).

This "complaint-like" submission closes by asserting a claim for damages against this Court,

demanding that "venue should be removed from this [District] and changed to the federal

district court in Kansas, Iowa or Nebraska that will provide [Hoffenberg] with the mandated

---

[8]  As noted <u>supra</u>, in actuality, Hoffenberg's appeal was dismissed for lack of jurisdiction.

fair trial ending [this District's] egregious manifest constitutional error by [this Court] and

her associate judge [with regard to whom Hoffenberg asserts the] same misconduct," id. at

17, and requesting congressional and Department of Justice's investigations of this Court's

decisions.  See id. at 30.[9]

2.      Hoffenberg's exhibits, consisting of:

      a.      another copy of Hoffenberg's letter to Representative Conyers requesting the

         Congressman to order Hoffenberg's release from confinement;

      b.      a document noting the fraud underlying Hoffenberg's criminal conviction and

         inviting the victims of his fraud to contact him for "small collections";

      c.      a copy of the BOP program statement encouraging the prisoners to meet their

         financial obligations;

      d.      pages from the Vanity Fair Magazine, March 2003 issue, discussing the life-style of

         Hoffenberg's former associate whom Hoffenberg seemingly hopes to see convicted

         on murder changes (in the allegedly current prosecution in Ohio) or, alternatively,

         on "Ponzi scheme" charges;[10] and

      e.      an excerpt from MacPherson v. Town of Southampton, 664 F. Supp. 2d 203, 211

         (E.D.N.Y. 2009).

---

    [9]  The Court is not entirely clear as to what investigation Hoffenberg is requesting since – according to his Complaint at bar – Congress and the Department of Justice had already both investigated and condemned this Court.

    [10]  The Court was unable to locate any currently ongoing prosecution of that associate, Jeffrey Epstein.  The only criminal record of Epstein this Court was able to locate is United States v. Epstein, Crim. Action No. 93-0193 (E.D.N.Y.), reflecting Epstein's five-year probation sentence upon Epstein's pleading guilty to conspiracy to stealing letters containing U.S. Treasury checks from residential mail boxes.

For the reasons detailed below, Hoffenberg's fourth amended complaint is subject to dismissal, regardless of whether it is construed as another motion for "disqualification" of this Court or as another set of civil pleadings.

**B.    Analysis**

      **1.    *Construction as Another Motion for Recusal***

Prior to his filing of the Complaint at bar, Hoffenberg had already submitted five applications seeking "disqualification" of this Court. See Docket Entries Nos. 29, 33, 34, 41 and 42. Apparently being dissatisfied with the Court's denial of these motions, Hoffenberg now elected to dedicate his entire Complaint to the same. Thus, for this sixth and final time, the Court will address Hoffenberg's recusal challenges.

Under 28 U.S.C. § 455(a), "any justice, judge or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(a) requires judicial recusal "if a reasonable person, knowing all the circumstances, would expect that the judge would have actual knowledge" of his/her interest or bias in a case. Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 860 (1988); In re Kensington Intern. Ltd., 368 F.3d 289, 301 (3d Cir. 2004). In making this determination, the court must consider how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." U.S. v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995); accord Clemens v. United States District Court for the Central District of California, 428 F.3d 1175, 1178 (9th Cir. 2005); Matter of Mason, 916 F.2d 384, 386 (7th Cir. 1990).

"[B]eliefs or opinions which merit recusal must involve an extrajudicial factor," Selkridge v. United of Omaha Life Ins. Co., 360 F.3d 155, 167 (3d Cir. 2004) (internal quotation marks and

citation omitted), and the Supreme Court has made it clear that "judicial rulings alone almost never constitute a valid basis" for recusal. Liteky v. United States, 510 U.S. 540, 555 (1994). The reason for this rule is that judicial decisions "in and of themselves can only in the rarest of circumstances evidence the degree of favoritism or antagonism required" to prove bias. Id. Consequently, a judge's prior adverse rulings cannot verify for the bias necessary for recusal under 28 U.S.C. § 455(a). See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1103 (11th Cir. 2001); United States v. Pearson, 203 F.3d 1243, 1277 (10th Cir. 2000); Leslie v. Grupo ICA, 198 F.3d 1152, 1160 (9th Cir. 1999); United States v. Arena, 180 F.3d 380, 398 (2d Cir. 1999); Matter of Hipp, Inc., 5 F.3d 109, 116 (5th Cir. 1993). This is true even if the judge consistently made adverse rulings against the party, see McCalden v. California Library Assoc., 955 F.2d 1214, 1224 (9th Cir. 1990); United States v. Mobile Materials, Inc., 881 F.2d 866, 877 (10th Cir. 1989), because an adverse decision, even if it is adverse on all issues raised, is not evidence of bias, especially when it is supported by the law and facts. See Crenshaw v. Hodgson, 24 Fed. App. 619, 621 (7th Cir. 2001) (citing Gleason v. Welborn, 42 F.3d 1107, 1112 (7th Cir. 1994); Byrne, 261 F.3d at 1103).

Finally, it should be noted that, where issues of recusal arise, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." Laird v. Tatum, 409 U.S. 824, 837 (1972); see also Clemens, 428 F.3d at 1179; Sensley, 385 F.3d at 598-99; Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995).

Here, the record does not support a finding of an extrajudicial factor causing impartiality or any degree of favoritism or antagonism on the part of this Court, so as to make fair judgment in this proceeding unlikely, moreover impossible. Indeed, this Court's preservation and careful parceling of Hoffenberg's claims in Hoffenberg-Habeas, same as this Court's examination of four rounds of

Hoffenberg's pleadings in this action, including the Court's detection and substantive analyses of those Hoffenberg's claims that were discernable from the multiple rounds of his pleadings, the Court's detailed and careful guidance as to the procedural requirements, pleading standards and a multitude of substantive tests that seemed to be implicated by Hoffenberg's pleadings and re-pleadings, as well as this Court's patient examination of the flood of motions Hoffenberg piled on this Court's docket, all these actions should have persuaded Hoffenberg as to this Court's utmost interest in availing Hoffenberg to an opportunity to litigate his claims, that is, provided that such litigation would be conducted in good faith.

However, it has become apparent to this Court that Hoffenberg is not interested in <u>bona</u> <u>fide</u> litigation.  Hoffenberg's allegations state no facts; rather, they express nothing but his disagreement with the Court's findings.  Hoffenberg's re-packaging of his disagreements with this Court's adverse rulings into the terminology of judicial bias cannot transform his Complaint into an application warranting relief.  <u>See</u> <u>Bolick v. Pennsylvania</u>, 2005 U.S. Dist. LEXIS 30140, *2 (E.D. Pa. Nov. 30, 2005) ("[t]he . . . judge cannot be disqualified under 28 U.S.C. § 455(a) merely because [the litigant] disagrees with his decision"); <u>see</u> <u>also</u> <u>Securacomm Consulting v. Securacom Inc.</u>, 224 F.3d 273, 278 (3d Cir. 2000) (holding that a "party's displeasure with legal rulings does not form an adequate basis for recusal"); <u>Jones v. Pittsburgh Nat'l Corp.</u>, 899 F.2d 1350, 1356 (3d Cir. 1990) ("Disagreement with a judge's determinations certainly cannot be equated with the showing required to so reflect on his impartiality as to dictate recusal").  This Court is unaware of any reason why it would not or could not treat the parties to this action in a fair and impartial manner.  Similarly, this Court is not aware of any conflict of interest.  Therefore, Hoffenberg's instant Complaint, being construed as his sixth motion for this Court's recusal, will be denied.

2.      *Construction as Another Civil Complaint*

a.      Overview of the Guidance Previously Provided to Hoffenberg

As noted supra, this Court, during the course of this action, explained to Hoffenberg the pleading requirements and, in addition, detailed to Hoffenberg the substantive tests with regard to almost one dozen claims, which the Court strived to discern from the hundreds of paragraphs of Hoffenberg's patchy pleadings comprising his first amended complaint, second amended complaint and third amended complaint.

With regard to the standard of pleadings, the Court guided Hoffenberg as follows:

[In 2008], addressing the clarifications as to the litigant's pleading requirement stated by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Court of Appeals for the Third Circuit provided the district courts with guidance as to what pleadings are sufficient to pass muster under Rule 8. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). Specifically, the Court of Appeals observed as follows:

"While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' . . . ." Twombly, 127 S. Ct. at 1964-65 . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. . . .

Id. at 230-34 (original brackets removed). This pleading standard was further refined by the United States Supreme Court in its recent decision Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009):

[In any civil action, t]he pleading standard . . . demands more than an unadorned ["]the-defendant-unlawfully-harmed-me["] accusation. [Twombly, 550 U.S.] at 555 . . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." [Id.] at 555. [Moreover,] the plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Id. [Indeed, even w]here a complaint pleads facts that are "merely consistent with" a defendant's liability, [the so-alleging complaint still] "stops short of [showing] plausibility of 'entitlement to relief.'" Id. at 557 (brackets

> omitted). [A fortiori,] the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to legal conclusions [or
> to t]hreadbare recitals of the elements of a cause of action, supported by mere
> conclusory statements[, i.e., by] legal conclusion[s] couched as a factual
> allegation [e.g.,] the plaintiffs' assertion of an unlawful agreement [or] that
> [defendants] adopted a policy "'because of,' not merely 'in spite of,' its
> adverse effects upon an identifiable group." . . . . [W]e do not reject these
> bald allegations on the ground that they are unrealistic or nonsensical. . . . It
> is the conclusory nature of [these] allegations . . . that disentitles them to the
> presumption of truth. . . . [Finally,] the question [of sufficiency of] pleadings
> does not turn [on] the discovery process. Twombly, 550 U.S.] at 559 . . . .
> [The plaintiff] is not entitled to discovery [where the complaint alleges any
> of the elements] "generally," [i.e., as] a conclusory allegation [since] Rule 8
> does not [allow] pleading the bare elements of [the] cause of action [and]
> affix[ing] the label "general allegation" [in hope of developing facts through
> discovery].

Iqbal, 129 S. Ct. at 1949-54.  The Third Circuit observed that Iqbal provided the
"final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v.
Gibson, 355 U.S. 41, 45-46 (1957),  which was applied to federal complaints before
Twombly.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  Since
Iqbal, the Third Circuit has required the district courts to conduct, with regard to
Rule 8 allegations, the two-part analysis when the district courts are presented with
a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as true,
> but may disregard any legal conclusions.  [See Iqbal, 129 S. Ct. at 1949-50].
> Second, a District Court must then determine whether the facts alleged in the
> complaint are sufficient to show that the plaintiff has a "plausible claim for
> relief" [in light of the definition of "plausibility" provided in Iqbal.]  In other
> words, a complaint must do *more than allege the plaintiff's entitlement to
> relief*.  A complaint has to "show" such an entitlement with its facts.  See
> Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court to infer more than the
> *mere possibility of misconduct, the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"* Iqbal, [129 S. Ct. at 1949-50
> (emphasis supplied)].  This "plausibility" determination will be "a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense."  Id.

Fowler, 578 F.3d at 210-11 (emphasis supplied).

Docket Entry No. 18, at 5-7 (brackets in original, footnotes omitted).

With regard to Hoffenberg's access-to-the-courts claims, the Court guided him as follows:

The other line of allegations, seemingly hinted at in [Hoffenberg's] "Second Meaningful Access Motion," suggests that [Hoffenberg] is under the impression that he has stated an "access to the courts claim" by simply asserting that (i) certain documents were taken from his possession by Defendants, and (ii) such taking automatically yielded a legal claims.  If [Hoffenberg] so intended to assert, [Hoffenberg's] allegations need not be elaborated upon in his re-amended complaint, since these allegations do not state a claim upon which relief can be granted.  The right of access to the courts is an aspect of the First Amendment right to petition. See McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989); see also Hudson v. Palmer, 468 U.S. 517, 523 (1984); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  In Bounds, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  430 U.S. at 828. The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis removed).  In addition, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.  Here, [Hoffenberg's] allegations are not being dismissed on the grounds of any taking of [Hoffenberg's] documents (i.e., [Hoffenberg's] inability to access these documents, even if true, has nothing to do with the Court's previous -- or instant -- dismissal of this matter.) Rather, [Hoffenberg's] instant claims are being dismissed on the grounds of [Hoffenberg's] own persistent refusal to submit a clear and concise complaint stating the facts of his claims rather than his self-serving conclusions. Therefore,

[Hoffenberg] failed to allege that he suffered an actual injury (within the meaning of the access-to-the-courts claim) as a result of any actions by Defendants.

Docket Entry No. 18, at 10-12 (footnotes omitted).

The Court further detailed this legal standard when the Court addressed Hoffenberg's second amended complaint, guiding Hoffenberg as follows:

A few claims [that the Court can discern this time around] appear to be: (a) an allegation that [Hoffenberg] was denied access to the courts because [Hoffenberg] cannot present the Court with additional paperwork (since this paperwork was, allegedly, taken from [Hoffenberg] by his prison officials); (b) an allegation that [Hoffenberg] was denied access to the courts because, in a certain medical malpractice action (which [Hoffenberg] seemingly instituted), a certain witness or a certain defendant filed an affidavit, the content of which [Hoffenberg] considered fraudulent . . . . If the Court deciphered these allegations correctly, none states a cognizable claim . . . . [Hoffenberg's] alleged inability to file additional paperwork in this matter in no way denies [Hoffenberg] access to the courts: [Hoffenberg], being a pro se litigant, is not required to provide the Court with any legal citations or legal memoranda. Moreover, at this initial stage, i.e., at the stage of screening, the Court takes all [Hoffenberg's] allegations as true, without requiring [Hoffenberg] to provide any exhibits or factual proof. Since the Court subjects [Hoffenberg's] pleadings to facial rather than factual review, [Hoffenberg], in order to state a claim, must merely assert, clearly and concisely, what exactly each defendant did and when, and the specific injury that Plaintiff suffered as a result of these actions. Thus, if this matter is dismissed upon screening, it would be because [Hoffenberg] fails to assert facts stating a claim, not because he cannot produce any evidence or legal citations, etc.

Docket Entry No. 23, at 3 n.1 (discussion of claims other than access-to-the-courts omitted).

In addition, the Court addressed Hoffenberg's "denial of medical care" challenges when the Court examined Hoffenberg's statements "mixing" these allegations into his access-to-the-courts claims. Such examination was conducted during the Court's review of Hoffenberg's third amended complaint. The Court guided Hoffenberg as follows:

This Court cannot replicate [Hoffenberg's] third amended complaint in this Memorandum Opinion and Order in its entirety, however, the Court finds it warranted to replicate at least the few first pages as an illustration of [Hoffenberg's] persistent approach to drafting his pleadings. For instance, at the beginning of his

Page 24 of 50

third amended complaint, [Hoffenberg] alleges as follows:

MD Sulayman in the medical deprivation claims. [Hoffenberg] at age 65 is held in federal detention at Fort Dix Prison from March 18, 2008 ongoing. [Hoffenberg's] prison detention is in violation of the constitution, by structural errors in the crimes of AUSA Nardello under prosecutor misconduct, evidenced in [Hoffenberg's] ongoing Habeas Corpus proceedings. . . . MD Sulayman is charged in <u>Bivens</u> constitutional violations in violating the mandatory community standard of care in treating [Hoffenberg's] injuries three spinal slipped discs, right torn shoulder rotator cup, back hips legs arm ongoing injuries with hypertension high blood pressure with other related [Hoffenberg's] injuries. Said <u>Bivens</u> misconduct started on March 18, 2008 and is ongoing involving other unknown B.O.P. Staff to this filing. Retaliation cover up charged against the Defendants are caused by [Hoffenberg's] and his wife retention at Devens Medical Prison by the D.O.J. Office of internal affaire attorney Thomas Hopkins, at the time [Hoffenberg's] was held in detention at Devens Medical Center Prison. [Hoffenberg] was retained by the B.O.P. and D.O.J. to provide evidence in crime(s) by B.O.P. Devens Prison Staff. Retaliation cover up charged against the Defendants are not included in the <u>Bivens</u> constitutional violations charged against Defendant MD Sulayman with the other unknown medical B.O.P. Staff Defendants. . . . Retaliation cover up are charged against the Defendants in seizing all of [Hoffenberg's] legal papers from March 18, 2008 ongoing in order to obstruct court access in [Hoffenberg's] litigating against the Devens Medical Center B.O.P. Staff, said seized [Hoffenberg's] legal papers are required to file concise claims in this lawsuit. That are impeded by the Defendants. Retaliation cover up by the Defendant are charged in obstructing [Hoffenberg's] from including vital evidence in this filing showing [Hoffenberg's] and his wife substantial assistance provided to the D.O.J. Office of Inspector General Attorney Thomas Hopkins at Devens Medical Center Prison. Government assistance by [Hoffenberg's] turning over to the B.O.P. and D.O.J. vital evidence showing crime(s) by B.O.P. Devens Staff. Retaliation cover up by the Defendant are charged in obstructing [Hoffenberg's] pleading in this filing with seized vital evidence held by the Defendants, showing the fraud on the Boston Federal Court, by the B.O.P. Medical Director S. Howard at Devens Prison. This Court is obstructed from reviewing [Hoffenberg's] vital evidence needed for concise pleading showing the Devens Medical Center B.O.P. Executive S. Howard fraudulent affirmations filed in the Boston Federal Court. This Court is obstructed by the Defendants retaliation cover up in seizing all of [Hoffenberg's] vital evidence legal papers from March 18, 2008 ongoing to this filing, whereby [Hoffenberg's] is prevented from pleading concise claims. [Hoffenberg's] seized vital legal papers evidence shows [Hoffenberg's] substantial assistance to D.O.J. Office of Inspector General

Attorney Thomas Hopkins at Devens Medical Center Prison. In crime(s) by B.O.P. Devens Prison Staff. Retaliation cover up by the Defendants seizure of all [Hoffenberg's] vital legal papers obstructs [Hoffenberg's] s Court access in this filing in concise pleading. Showing the backward looking pleading claims against the Devens Medical Center Prison B.O.P. Officials filing fraudulent S. Howard Medical affirmations in some $ 300 Million Dollars in filed Boston Federal Court lawsuits against the Devens Medical Center Prison for Medical malpractice with Bivens violation lawsuits.

Docket Entry No. 25, at 2-6.  The Court notes its grave concern with [Hoffenberg's] adamant ignorance of this Court's guidance as to the applicable requirements and [Hoffenberg's] equally adamant refusal to comply with this Court's orders.  Hence, for this last time, the Court provides Plaintiff with guidance as to how to plead his claims. . . .  As this Court has already explained to Plaintiff, time and again, Plaintiff must state the fact describing acts or actions by each particular defendant. . . . [Hoffenberg's] claims asserting medical malpractice cannot be raised in this matter (and, in addition, cannot present a litigation duplicative of that initiated in any other court).  [Hoffenberg] must assert facts showing that he was denied care for his medical needs, or was denied -- for non-medical reasons -- the specific care already prescribed to him by a medical doctor.  See Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326 (3d Cir. 1987). To prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs.  See Estelle, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Persistent severe pain qualifies as a serious medical need.  A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Lanzaro, 834 F.2d at 347.  "Deliberate indifference" exists "where [a] prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse, 182 F.3d at 197.  In contrast, "deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  See Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Consequently, all [Hoffenberg's] claims asserting that a doctor, here, Dr. Sulayman "mandatory community standard of care in treating [Hoffenberg's] injuries," will be dismissed with prejudice.  Dismissal with prejudice means that [Hoffenberg] cannot re-assert these claims in his amended pleadings . . . .  That applies with equal force to Plaintiff's claims that he is being denied access to the courts by not having evidence or documents that he, allegedly, needs to state his claims concisely.  As this Court has already explained, at the instant pleading state, all [Hoffenberg's] factual allegations are considered true.  Hence, [Hoffenberg] need not produce any evidence, he just needs to state the facts as he remembers these facts in good faith.  Therefore, as this Court already noted, if [Hoffenberg's] instant matter is dismissed for

[Hoffenberg's] failure to adhere to the pleading requirements of Rule 8, [Hoffenberg] cannot shift the blame for such dismissal to defendants.  Therefore, [Hoffenberg's] claims asserting denial of access to the courts on the grounds of the instant matter are dismissed, and such dismissal is with prejudice, which means that [Hoffenberg] cannot reiterate his claims in his amended pleadings.  An analogous analysis applies to Plaintiff's claims asserting denial of access to the courts with regard to actions other than the instant matter. . . . [T]here is no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. … [T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a [non-frivolous] legal claim. He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.  Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury."  Id. at 348-55 and n.3; Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).  Whether [Hoffenberg] is complaining of a lost past or future claim, he must state the merits of the underlying cause of action and its lost remedy.  See Christopher v. Harbury, 536 U.S. 403, 415-18 (2002); Lewis, 518 U.S. at 353 n.3, 354.  "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued."  Christopher, 536 U.S. at 417 (footnote omitted).  The Court will then analyze the underlying claim to ensure that "the nature of the underlying claim is more than hope."  Id. at 416. . . . [I]n [Hoffenberg's] amended pleadings, [his] claim[s] must be stated in terms of "who, when, why and what" and not by repeating the [same conclusory] word[s].

Docket Entry No. 26, at 5-12  (discussion of claims other than access and denial of medical care and repeats of the Court's legal guidance provided to Hoffenberg with regard to Hoffenberg's first and second amended complaints are excluded to the maximum degree feasible; footnotes omitted).

As the discussion below illustrates, Hoffenberg has patently ignored this Court's numerous attempts to provide him with helpful legal guidance.

**b.**   Hoffenberg's Challenges in his Fourth Amended Complaint

Here,  it appears that Hoffenberg seeks to:

a.   revive his twice-dismissed line of claims that he is being denied "access to the courts" by asserting that his rights are being violated as a result of this Court's mandates directing his compliance with the pleading requirements and this Court's findings that those claims were facially without merit under the applicable substantive tests;

b.   reassert his previously dismissed claim asserting "denial of medical care" by Dr. Sulayman; and

c.   introduce, in this civil rights matter, the claim which this Court has already dismissed, as unexhausted, in Hoffenberg-Habeas (i.e., the claim asserting that Hoffenberg should be released into home confinement under the Second Chance Act, even though it appears that Hoffenberg has not served 75% of his sentence and, hence, cannot be considered for the Act's pilot program altogether).

Hoffenberg's first two claims require little discussion because these claims were already substantively analyzed  and dismissed (and re-dismissed) by this Court.  As detailed by this Court in its prior decisions, Hoffenberg cannot assert a viable legal claim unless he states the facts showing that particular defendants so interfered with Hoffenberg's legal actions (which should be initiated either with regard to Hoffenberg's conviction or with regard to his conditions of confinement) as to cause Hoffenberg an actual loss of an actually meritorious legal claim.  See Christopher, 536 U.S. at 415-18; Lewis, 518 U.S. at 353 n.3, 354.  Here, Hoffenberg did not "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued," Christopher, 536 U.S. at 417, he even did not hint at any actually lost meritorious legal claim.  Moreover, he did not connect any particular defendant to such claim.  Instead, he asserted that this Court's dismissal of his pleadings and challenges in *this matter* "denied him access to the

courts." However, Hoffenberg's disagreement with this Court's determinations has nothing to do with his First (or Fourteenth) Amendment rights of access. Since the remedy for his disagreement is appeal rather than reiterations of his disagreements before this Court, Hoffenberg's access-to-the-courts claim is without merit and shall be dismissed accordingly.

Hoffenberg's "denial of medical care" claim fares no better. Since it appears that Hoffenberg is now re-stating his medical malpractice challenges against Dr. Sulayman, these allegations are subject to dismissal for the reasons already articulated by this Court, i.e., on the grounds that it is well-established that"deliberate indifference" is more than mere malpractice or negligence. It is a state of mind equivalent to reckless disregard of a known risk of harm, see Farmer, 511 U.S. at 837-38, and Hoffenberg has failed to plead specific facts showing each particular defendant's (named in connection with that claim) deliberate indifference to Hoffenberg's serious medical need by stating the "who, when, why and what" rather than occasionally repeating his self-serving bold conclusion that he was "denied medical care."[11]

Because Hoffenberg has refused to provide any factual information as to the alleged denial of medical care in spite of this Court's step-by-step repeated guidance, Hoffenberg's challenges are subject to dismissal under the pleading requirements of Rule 8, as clarified in Iqbal.

Next, Hoffenberg's Second Chance Act challenges (which are newly-minted for the purposes of this action, but present a repeat of Hoffenberg's claim raised in Hoffenberg-Habeas), asserting that he should be released from confinement under the Second Chance Act, cannot be entertained in this civil matter. Federal law provides two avenues of relief to prisoners: a petition

---

[11] Indeed, as Hoffenberg's third amended complaint indicated, Dr. Sulayman was diligently treating all Hoffenberg's alleged medical needs, although Hoffenberg found such treatment insufficient to meet his preferences.

for habeas corpus and a civil rights complaint.  See Muhammad v. Close, 540 U.S. 749, 750 (2004).

"Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . [while] requests for relief turning on circumstances of confinement [fall within the realm of] a § 1983 action."  Id.; see also Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir. 2001) ("A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's rights under color of federal law").  In a series of cases beginning with Preiser v. Rodriguez, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of civil rights and habeas corpus.  In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result

of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate or speedier release.  See id. at 476. Assessing the prisoners' challenge, the Supreme Court held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a habeas corpus petition.  See id. at 500.  Hence, under the holding of Preiser, Hoffenberg cannot import his unexhausted (or even exhausted) habeas challenges into the instant civil rights action.  See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) ( "[W]henever the challenge ultimately attacks the 'core of habeas' - the validity of the continued conviction or the fact or length of the sentence - a challenge, however denominated and regardless of the relief sought, must be brought by way of a habeas corpus petition").  Thus, Hoffenberg's challenges seeking release into home confinement are subject to dismissal as falling outside the scope of jurisdiction provided to this Court by Bivens.

Finally, Hoffenberg's desire to repay the victims of his fraud the monies he defrauded from

them has no relevance to Hoffenberg's instant action (or to his <u>Hoffenberg-Habeas</u> action), since

neither Hoffenberg's period of confinement nor his conditions of confinement are related to that

issue.  Simply put, in the event Hoffenberg has funds he wishes to use for such repayment, he is free

to so repay.[12]  Conversely, in the event Hoffenberg has no such funds, this lack of funds has no

impact on his habeas or civil rights.

### c.    Leave to Amend

Generally, a plaintiff may be granted "leave [to amend,] . . . when justice so requires."  <u>See</u>

<u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Lorenz v. CSX Corp.</u>, 1 F.3d 1406, 1414 (3d Cir. 1993).

Indeed, "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep

. . . may be decisive to the outcome and accept the principle that the purpose of pleading is to

facilitate a proper decision on the merits."  <u>Foman</u>, 371 U.S. at 182-83.  However, where the plaintiff

had already amended plaintiff's complaint and yet failed to allege sufficient facts, the courts may

find that "[t]hree bites at the apple is enough," and conclude that it is proper to deny leave to

replead.  <u>Salinger v. Projectavision, Inc.</u>, 972 F. Supp. 222, 236 (S.D.N.Y. 1997) (citing <u>Olkey v.</u>

<u>Hyperion 1999 Term Trust, Inc.</u>, 98 F.3d 2 (2d Cir. 1996); <u>Career Educ. II</u>, 2007 U.S. Dist. LEXIS

23635, at *36 (where "plaintiffs have had ample opportunities to research and plead their claims "

---

[12]   In the event Hoffenberg, being a confined individual, is of the opinion that he has no
authority to distribute his funds, Hoffenberg's remedy is an application for appointment of
trustee or of an analogous administrator of his funds.  Such application must be filed with the
court having jurisdiction to perform such appointment.  Analogously, if Hoffenberg is of the
opinion that his prison officials are acting in contempt of the restitution orders issued by the
court presiding over Hoffenberg's criminal proceedings, Hoffenberg's mandamus challenges
should be presented to that court.  However, it is apparent that these issues cannot have any
impact on Hoffenberg's habeas claims and/or his civil rights challenges presented in this matter
or in <u>Hoffenberg-Habeas</u>  (and this Court expresses no opinion as to the procedural or
substantive validity (or invalidity) of Hoffenberg's applications to that effect in the event such
applications are actually filed).

but failed to compose a sufficient pleading, the complaint is dismissed with prejudice).

Here, Hoffenberg had *five* opportunities to plead his claims and yet – fifteen months of litigation later and dozens of pages of this Court's guidance regardless – Hoffenberg: (a) produced and re-produced only those claims that were facially without merit; and (b) remained either unable or unwilling (or both) to state the facts of his challenges concisely and with the required degree of clarity.  His fourth amended Complaint verifies his interest in producing solely the volumes of self-serving patchy tirades against Defendants and analogous volumes of accusations against this Court (expressing nothing but Hoffenberg's displeasure with the Court's substantive and procedural rulings).  In light of the foregoing, it has become apparent to this Court that granting Hoffenberg another leave to amend his pleadings would necessarily be futile.  Therefore, the Court will dismiss Hoffenberg's latest round of pleadings, i.e., his fourth amended Complaint, with prejudice.

## III.    *Hoffenberg v. United States*, Civil Action No. 10-2788

The Court's conclusion that Hoffenberg's litigation practices present abuse of the legal process ensues not only from Hoffenberg's litigations before this Court (i.e., in the instant matter and in Hoffenberg-Habeas) but also from the Court's taking notice of Hoffenberg's litigation practices in Hoffenberg v. United States, Civil Action No. 10-2788 (JBS) (D.N.J.) ("Hoffenberg-JBS"), i.e., another action recently instituted by Hoffenberg in this District and presided by Judge Jerome B. Simandle ("Judge Simandle").[13]

---

[13]

Rule 201(b) . . . permits a district court to take judicial notice of facts that are "not subject to reasonable dispute in that [they are] either[:] (1) generally known within the territorial jurisdiction of the trial court[;] or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Rule 201(b).

In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (finding that judicial notice

Hoffenberg-JBS was initiated by Hoffenberg on June 1, 2010, see Hoffenberg-JBS, Docket Entry No. 1. Hoffenberg filed his submission in that action right after this Court's entry of the decision denying numerous Hoffenberg's motions (specifically, upon this Court's denial of his motion requesting "due process" by "disqualification" of this Court on the grounds that "the Ethic(s) Committee, in the United States Congress approv[al of Hoffenberg's] need[] to file paper(s)," his motion for "declaratory relief" requesting him being interviewed by the Associated Press Agency, his motion for reconsideration of this Court's prior orders (which, too, denied his requests for "disqualification" of this Court), and this Court's dismissal of his one more "motion for declaratory relief" seeking, again, "disqualification" of this Court for "violations of well settled law").

At the time when Hoffenberg submitted his complaint in Hoffenberg-JBS, he also filed – in the instant action – an application to the Clerk, in which he directed the Clerk to "produce all court public information documents that name [this Court] in any part therein."

Hoffenberg's submission made in Hoffenberg-JBS consisted of a 37-page, 143-paragraph "complaint-like" document accompanied by a 36-page set of "exhibits." See Hoffenberg-JBS, Docket Entry No. 1. Well in line with Hoffenberg's multiple rounds of pleadings filed in this matter, Hoffenberg's submission in Hoffenberg-JBS asserted the already-familiar panoply of claims, making

_____

could be properly taken with respect to three different categories of documents which include: (1) documents relied upon in the complaint; (2) documents filed with a United States law enforcement agency; and (3) undisputable data, e.g., purely informational opinion-free data compiled by a very widely quoted and, thus, deemed reliable, news service); accord Jackson v. Broad. Music, Inc., 2006 U.S. Dist. LEXIS 3960, at *18 (S.D.N.Y. Jan. 31, 2006) ("the court may take judicial notice of public records and of 'admissions in pleadings and other documents in the public record filed by a party [to the instant matter] in other judicial proceedings") (quoting Harris v. New York State Dep't of Health, 202 F. Supp. 2d 143, 173 (S.D.N.Y. 2002), and citing Munno v. Town of Orangetown, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005)).

assertions: (a) that Hoffenberg was allegedly denied access to the courts; (b) that he was allegedly retaliated against; (c) that certain witnesses, allegedly, fraudulently testified against him; (d) that he was, allegedly, unduly prevented from paying the restitution ordered in his underlying criminal proceedings; (e) that he was, allegedly, unduly placed in segregated confinement; (f) that he, allegedly, should be released into home confinement under the pilot program of the Second Chance Act; (g) that Congressman Conyers was introducing for congressional consideration a proposal for Hoffenberg's filing of "papers," etc., i.e., the claims already addressed and dismissed by this Court in the instant matter, with some dismissals being with prejudice and others with leave to amend.  See id.

Hoffenberg's filing of the original submission in Hoffenberg-JBS was followed by a string of  his daily filings of letters to the Clerk, see Hoffenberg-JBS, Docket Entries Nos. 2, 3, 4 and 5 (reflecting daily or twice-a-day filings of allegedly omitted page from the "complaint-like" part of his submission, request for the index number of Hoffenberg-JBS, a statement informing the Clerk that Hoffenberg-JBS was Hoffenberg's "repeated/second" legal action, etc).

After this string of daily filings, Hoffenberg filed his first motion in Hoffenberg-JBS; that motion sought an order allowing him to amend his submission.  See id., Docket Entry No. 6 (promising to file, "within 30 days . . . actual injury evidence").[14]

On July 12, 2010, Judge Simandle issued an order in Hoffenberg-JBS reading as follows:

It comes to the attention of this Court that [Hoffenberg] is a party to another action,

_____

[14]  That application was, seemingly, made in connection with this Court's dismissal of Hoffenberg's denial-of-access-to-the-courts claims, see Hoffenberg-JBS, Docket Entry No. 6, since Hoffenberg's motion to Judge Simandle utilized the very language that was provided to Hoffenberg, as guidance, by this Court (i.e., the explanations of substantive tests posed by Christopher, 536 U.S. at 415-18, and Lewis, 518 U.S. at 353 n.3, 354).

which is identical to the instant matter in all substantive respects.  See [Instant Matter], Civil Action No. 09-4784 (RMB) (D.N.J., initiated on September 17, 2009).  The [Hoffenberg-JBS] matter is, therefore, duplicative of [the Instant Matter].

> The power of a federal court to prevent duplicative litigation is intended "to foster judicial economy and the 'comprehensive disposition of litigation,'" Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (quoting Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)), and "to protect parties from 'the vexation of concurrent litigation over the same subject matter.'"  Id. (quoting Adam v. Jacobs, 950 F.2d 89, 93 (2d Cir. 1991)).

Porter v. NationsCredit Consumer Disc. Co., 2003 Bankr. LEXIS 933, at *33 (Bankr. E.D. Pa. 2003).  It appears not in the interests of justice to allow [Hoffenberg's] litigation of this duplicative [Hoffenberg-JBS] matter.  Similarly, it appears not in the interests of justice to assess a filing fee against [Hoffenberg] with regard to the [Hoffenberg-JBS] action.

Hoffenberg-JBS, Docket Entry No. 7 ("10-2788 Order"), at 1-2.

Consequently, Judge Simandle directed the Clerk to administratively terminate Hoffenberg-JBS without assessing another filing fee against Hoffenberg.  See id. at 2.  In response to Judge Simandle's determination, Hoffenberg made eight filings:

a. Just two days after Judge Simandle's entry of the 10-2788 Order, i.e., on July 14, 2010, Hoffenberg filed a letter seeking a sixty-day extension to amend his by-then-already-dismissed complaint.  See Hoffenberg-JBS, Docket Entry No. 8.  Hoffenberg asserted that his prison officials' "crimes" warrant such extension, but did not enlighten Judge Simandle as to the nature of these alleged "crimes."  See id.

b. Forty-eight hours later, that is, on July 15, 2010, the Clerk docketed Hoffenberg's submission informing Judge Simandle of Hoffenberg's intent to "brief" Judge Simandle's 10-2788 Order.  See Hoffenberg-JBS, Docket Entry No. 9.  In order to so "brief," Hoffenberg requested another extension, this time for the period of 45 days.  See id.

c.    Three days later, that is, on July 19, 2010, the Clerk docketed another document received from Hoffenberg; that submission again requested a sixty-day extension in order to amend Hoffenberg's already-dismissed complaint.  See Hoffenberg-JBS, Docket Entry No. 10. That document – asserting, again, that Hoffenberg's prison officials were committing certain unspecified "crimes" – was a copy of Hoffenberg's submission filed on July 14, 2010.

d.    Another three days passed by and, on July 22, 2010, Hoffenberg filed another letter in Hoffenberg-JBS.  See Hoffenberg-JBS, Docket Entry No. 11.  Same as in his submissions made to this Court for the purposes of the instant action, Hoffenberg's letter informed Judge Simandle that the Associated Press Agency was "covering" Hoffenberg's litigation endeavors.  See id.  In addition, Hoffenberg, again, requested 45-day period to "brief" Judge Simandle's 10-2788 Order and, in addition, informed Judge Simandle of Hoffenberg's opinion that this Court's decisions (in the instant matter) were "clear error."  See id.

e.    Two weeks passed, and on August 5, 2010, Hoffenberg filed another motion, this time seeking Judge Simandle's reconsideration of the 10-2788 Order.  See Hoffenberg-JBS, Docket Entry No. 12.  That motion: (i) asserted that Judge Simandle's decision was an "illegal termination . . . showing abuse in discretion [of] extreme constitutional violation," id. at 6-7 (bolding and underlining removed); (ii) informed Judge Simandle of Hoffenberg's opinion that this Court was committing "extreme judicial misconduct" by dismissing Hoffenberg's pleadings in the instant matter, see id. at 7  (bolding and underlining removed); (iii) alleged that Judge Simandle's 10-2788 Order "violate[d] federal law" and required that Hoffenberg-JBS be "remove[d] and vacate[d] from [Judge Simandle's] operations," id. at 7-8  (bolding and underlining removed), etc.  The motion closed with Hoffenberg's

observations that: (i) "Judge Simandle showed that he is the same kind of judge [as this Court], by manifest error of what is in front of the Third Circuit [i.e.,] illegal extreme unconstitutional lower court orders by [this Court],"[15] id. at 8 (bolding, parenthetical and underlining removed); and (ii) Hoffenberg was of the opinion that Judge Simandle's 10-2788 Order was a "manifest constitutional error mandating change of venue to a fair tribunal with no discrimination [and] deep seated favoritism."   Id. at 15-16 (bolding, capitalization and underlining removed).   In addition, Hoffenberg asserted that Judge Simandle's 10-2788 Order was "extreme retaliation and discrimination," id. at 13 (bolding, capitalization and underlining removed), and threatened Judge Simandle (and this Court) as follows:

> Judge Simandle may think that this action, was just another simple prison pro-se lawsuit.  Said mind set [is a] manifest error . . . causing the demanded Federal Government Judicial Misconduct Investigation. . . . [Soon these] judicial discrimination will cause the federal government top executive in Washington D.C. to act in the required federal impeachment investigation . . . .  The National Law Firm, Washington, D.C. Partner . . . will soon be directed to act . . . . Judge Simandle and [this Court] are not above the law, in their extreme judicial misconduct, discrimination and retaliation, violating federal restitution court order(s). . . . [Such] Extreme Judicial Discrimination and retaliation . . . will not be allowed in our litigation(s). . . .

Id. at 15-16 (bolding and underlining removed, capitalization and parenthetical in original).

f.     Five days passed after Hoffenberg's filing of the above-detailed "motion for reconsideration" and, on August 10, 2010, Hoffenberg submitted his application for appointment of pro bono counsel, seeking "limited" appointment to represent him in the already-terminated Hoffenberg-JBS matter.  See Hoffenberg-JBS, Docket Entry No. 13.

g.     One week passed and, on August 18, 2010, Hoffenberg submitted a letter, this time asserting

---

[15]  The Court presumes that Hoffenberg was referring to his interlocutory appeal in the instant matter, which was dismissed by the Court of Appeals for lack of jurisdiction.

that his prison officials were committing "mail fraud" by capping the amount of stamps Hoffenberg could purchase at twenty stamps per week.  See Hoffenberg-JBS, Docket Entry No. 14 (alleging that such limitation prevented Hoffenberg from having "full time mail").

h.  Another week passed by and, on August 25, 2010, Hoffenberg filed another motion.  See Hoffenberg-JBS, Docket Entry No. 15.  That motion, seemingly seeking Judge Simandle's recusal, mimicked Hoffenberg's filing docketed as Hoffenberg-JBS Docket Entry No. 12 and, paramountly here, similar to the stream of Hoffenberg's motions filed in the instant matter seeking (and re-seeking, and then re-re-seeking, again and again) this Court's recusal. Although Hoffenberg's motion seeking Judge Simandle's recusal is rather lengthy, this Court finds it warranted to replicate the bulk of it in this Opinion.  Specifically, Hoffenberg's recusal motion as to Judge Simandle reads:

> Motion showing the Judge Simandle['s 10-2788 Order] manifest constitutional error mandating recusal . . . in this lawsuit . . . . Question(s) presented[:] Whether Judge Simandle showed deep seated favoritism, appearance of partiality, prejudice, by judicial misconduct against [Hoffenberg], in the [10-2788 O]rder to the clerk, to cover up obstruct the administration of justice in the Judge Simandle impropriety illegal order . . . for the clerk to remove this lawsuit, from this court's judicial operation(s). [T]herein mandating, Judge [S]imandle to disqualify himself, in this action, in extreme due process violation(s) . . . well settled law by manifest constitutional error. Whether Judge Simandle['s 10-2788 O]rder to the clerk to cover up, by the removal of this lawsuit, from this court's judicial operation(s), showed the intent to obstruct justice, by extreme violation(s) in due process, whereby, the [10-2788] cover up [O]rder to the clerk, showed no Judge Simandle fairness, impartiality, causing the Judge Simandle bent of mind, bias that denied public confidence in the [10-2788] cover up [O]rder, that overlooked, the integrity of this court. Wherein, [the 10-2788 Order] did show the Judge Simandle, cover up order, to the clerk in the lawsuit, mandating the appearance of partiality , unbalanced court order, that another person might reasonably question why Judge Simandle acted in [the 10-2788 Order] to cover up this entire lawsuit, in the extreme denial of all of [Hoffenberg's] appeal due Process, by manifest constitutional error. [Hoffenberg's] motion for reconsideration . . . mandated consolidation, in

this motion, showing judicial misconduct extreme violation(s) . . . unfair Judge Simandle illegal tribunal. Whether Judge Simandle showed no fairness, disinterested justice, evenhanded judicial consideration, for the mandated [Hoffenberg's] multi billion dollar investor restitution victims asset collection(s) , in some (7) seven [Hoffenberg's] restitution constructive trust court order(s), that were violated in the Judge Simandle extreme [10-2788 Order] due process illegal termination of [Hoffenberg-JBS] lawsuit, by judicial misconduct, malice in deliberate malice conflict, with the settled law, quoted in [the 10-2788 Order]. Judge Simandle is charged in acting out judicial misconduct, by discrimination retaliation against [Hoffenberg], in the [10-2788 Order] extreme due process violation(s), that were motivated by [this Court's] communication(s) with Judge Simandle, regarding [Hoffenberg], showing manifest constitutional error by [this Court]. Whether the Judge Simandle['s 10-2788 O]rder to the clerk, to cover up and remove this lawsuit, from the courts judicial operation(s), show the Judge Simandle appearance of bias causing this incompetent tribunal, irregularity, that obstructs justice, in the Judge Simandle vindicating the interests of this court, that mandate(s) that Judge Simandle, must disqualify himself, in obstructing the right to [Hoffenberg's] fair administration of justice. . . . . Judge Simandle must disqualify himself in this action that was overlooked in the [10-2788] illegal [O]rder.   State major pension funds, including some 200,000 [Hoffenberg's] victim(s), are damaged in the Judge Simandie illegal [10-2788] order.   Manifest constitutional error.   Multi Billion Dollar [Hoffenberg's] constructive trust restitution victims asset collection(s), were damaged, in the Judge Simandle['s] illegal [10-2788 O]rder.   Manifest constitutional error, malice in violating [Hoffenberg's] restitution court orders. [Law] mandate(s) that Judge Simandle must disqualify himself, when his impartiality, might be reasonably questioned. Manifest constitutional error herein. Liteky v. United States, 127 l.ed.2d 474 (.19.94), affirmed ongoing in the U.S. Court of Appeals Third Circuit. [The 10-2788 Order] show(s) the Judge Simandle order to the clerk, to cover up and remove this lawsuit, from the courts judicial operations. Manifest constitutional error, by extreme malice violating due process. Said above intent, by Judge Simandle show(s) judicial misconduct, that mandate(s) Judge Simandle, to disqualify himself from this action. Manifest constitutional error. Judge Simandle overlooked, the mandated question, in recusal in [the 10-2788 Order] by manifest constitutional error.  Well settled law mandates that, the Judge Simandle [10-2788 O]rder to the clerk, to cover up and remove, this lawsuit, from the courts judicial operation(s), caused the appearance of partiality. . . . Manifest constitutional error, extreme malice in due process appeal violation(s). Judge Simandle above [10-2788] order to the clerk, to cover up this lawsuit, must require a factual hearing. . . . Manifest constitutional error. Public confidence in the integrity of this very high profile lawsuit, mandate(s) Judge Simandle to disqualify himself. Judge Simandle had no

such authority in the [10-2788 O]rder that removed this lawsuit, from this court's judicial operation(s). Manifest constitutional error. The above Judge Simandle judicial misconduct in [the 10-2788 Order], the removal of this lawsuit from this court's judicial operation(s), did obstruct due process, in [Hoffenberg's] right in appeals. Judge Simandle above [10-2788 O]rder to the clerk, to cover up this lawsuit, must require a factual hearing. . . . Manifest constitutional error. Public confidence in the integrity of this very high profile lawsuit, mandate(s) judge simandle to disqualify himself. Judge Simandle had no such authority in the [10-2788 O]rder that removed this lawsuit from this court's judicial operation(s), that did obstruct due process, in [Hoffenberg's] right in appeals.  Judge Simandle did act in the intent in the obstruction of the administration of justice in the illegal [10-2788 O]rder. Manifest constitutional error. Deliberate extreme malice in the Judge Simandle illegal manifest constitutional error judicial misconduct violating . . . bias and prejudice . . . .  Partialiality bias mandating disqualification in this action, evidenced in the [10-2788] obstruction of justice [O]rder to the clerk to remove this lawsuit from the courts judicial operation(s) abuse of Judge Simandle authority as a federal judge that did obstruct [Hoffenberg's] appeal rights.  Judge Simandle violated the rule of law, in the [10-2788] illegal [O]rder to the clerk, that mandated this lawsuit be removed from this court's judicial operation(s). Judge Simandle abused his authority in office, in the above illegal [O]rder, extreme malice manifest constitutional error, judicial misconduct, retaliation and discrimination, intent to harm [Hoffenberg]. The above Judge Simandle intent show(s) the appearance of partiality.   The above Judge Simandle intent, mandate(s) this courts impartiality, might by reasonably questioned. Judge Simandle authority prohibit(s) the [10-2788 O]rder to the clerk, to remove this lawsuit from this court's judicial operations, causing [Hoffenberg] extreme due process appeal obstruction of the administration of justice. Manifest constitutional error by malice.   Judge Simandle [10-2788] above intent [O]rder, violated and obstructed [Hoffenberg's] some (7) seven federal court SDNY restitution order(s). Manifest constitutional error by malice. . . . [Hoffenberg's] instant lawsuit, show(s) [Hoffenberg] is, one of the restitution victim(s), in this lawsuit. Judge Simandle intent in the [10-2788 O]rder to remove this lawsuit from the court's judicial operations, show(s) the Judge Simandle malice in the extreme obstruction of the administration of justice, in this lawsuit due process. Manifest constitutional error. Respectfully Judge Simandle must disqualify himself in this lawsuit. Or set the mandated hearing in this malice.

<u>Hoffenberg-JBS</u>, Docket Entry No. 15 (spelling of Judge Simandle's name corrected;

remaining grammar and punctuation in original; capitalization and parenthetical in original;

bolding and underlining removed).

Page 40 of  50

The chain of Hoffenberg's submissions made in Hoffenberg-JBS seems to suggest that Hoffenberg initiated Hoffenberg-JBS proceedings not in good faith but, rather, in an attempt to "judge-shop," i.e., in hope that Judge Simandle might overlook the procedural and substantive shortcomings of Hoffenberg's pleadings and allow him to pursue improperly pled and/or facially meritless claims.[16]   See Disability Advocates & & Counseling Group, Inc. v. Betancourt, 379 F. Supp. 2d 1343 (S.D. Fla. 2005) (where plaintiffs have filed two nearly identical complaints alleging the same cause of action against identical defendants and seeking the precisely same relief, plaintiffs' duplicate filing of the same case, before separate judges of the same court at the same time violates the universally condemned practice of judge-shopping: this attempt to manipulate judicial assignment processes of the court interferes with the orderly administration of justice and mandates dismissal with prejudice).   Indeed, this conclusion is reinforced by Hoffenberg's recently-developed

_____

[16]   The Court of Appeals expressly cautioned against judge-shopping practices packaged in motions for recusal.  See United States v. Dalfonso, 707 F.2d 757, 761(3d Cir. 1983) ("This potential judge shopping problem was not lost upon the framers of the federal recusal statute.  In the House Report accompanying the bill they cautioned: 'Disqualification for lack of impartiality must have a reasonable basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice'") (quoting H.R. Rep. No. 1453, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News p. 6355).   Judge-shopping practices are not tolerated.  See Vaqueria Tres Monjitas, Inc. v. Rivera Cubano, 230 F.R.D. 278, 279 (D.P.R. 2005) ("[courts have] repeatedly recognized the troubling practice of judge-shopping" ) (citing Obert v. Republic Western Ins. Co., 398 F.3d 138 (1st Cir. 2005); Ellis v. United States, 313 F.3d 636 (1st Cir. 2003); United States v. Brooks, 145 F.3d 446 (1st Cir. 1998); In re Martinez-Catala, 129 F.3d 213 (1st Cir. 1997); In re Cargill, Inc., 66 F.3d 1256 (1st Cir. 1995); and Tamburro v. East Providence, 1992 U.S. App. LEXIS 32825 (1st Cir. Dec. 18, 1992)); see also Lane v. City of Emeryville, 1995 U.S. App. LEXIS 11629 (9th Cir. Cal. May 16, 1995) ("Judge-shopping is a practice that has been universally condemned. The district court [was correct in its decision] to impose sanctions on [the litigant] for judge-shopping" (citing United States v. Conforte, 457 F. Supp. 641, 652 (D. Nev. 1978), aff'd, 624 F.2d 869 (9th Cir.), cert. denied, 449 U.S. 1012 (1980); and National Treasury Employees Union v. IRS, 765 F.2d 1174, 1177 n.5 (D.C. Cir. 1985)).

interest in Judge Simandle's recusal and in transfer of Hoffenberg's instant action (and duplicative Hoffenberg-JBS action) to other district courts where, it appears, Hoffenberg is hoping to continue his "judge-shopping" efforts.  See Hoffenberh-JBS, Docket Entry No. 15; accord Instant Action, Docket Entry No. 59, at 1-6.  Such litigation practices, however, abuse legal process.  See Oxbow Energy, Inc. v. Koch Industries, Inc., 686 F. Supp. 278, 282 (D. Kan. 1988) ("the court cannot condone plaintiffs' practice of running to a different [city and] filing a new case every time a judge in a prior action makes a ruling adverse to that litigant's position").  Simply put, Hoffenberg's submissions suggest that Hoffenberg has no interest in bona fide litigation; rather, he is in search of the means to manipulate the judiciary, and to overburden the those defendants whom he chooses to name.

## IV.   **Limited Order of Preclusion**

The aforesaid conclusion presents this Court with the task of: (a) tailoring the means to control Hoffenberg's abuses of legal process, while (b) preserving Hoffenberg's ability to litigate meritorious claims in the event Hoffenberg's develops both such claims and desire to litigate them in good faith, i.e., by complying with the requirements posed by the Rules of Civil Procedure and the substantive tests governing those claims.[17]  To that effect, this Court finds a recent decision entered by Chief Judge Brown in In re Telfair, __ F. Supp.2d __, 2010 U.S. Dist. LEXIS 110681 (D.N.J. Oct. 15, 2010), instructive.

Discussing the tool of order of preclusion, Judge Brown observed as follows:

In light of the multitude, volume and content  of [the plaintiff's] submissions . . . ,

---

[17]  This Court's prior decisions is this matter warned Hoffenberg, time and time again, that he would be subject to sanctions in the event he continued to disregard the procedural requirements and/or this Court's orders.

this Court must select a proper means to control [the plaintiff's] litigation practices. In that endeavor, the Court turns for guidance to the history, goals and language of the legal provisions and case law addressing the issue.

It has become axiomatic that, when Congress enacted the Title VIU of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, on April 26, 1996, the congressional purpose was, "primarily[,] to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Torts Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752. 755 (3d Cir. 1996). In other words, the crucial part of the congressional plan was to curtail meritless prisoner suits through various restrictions. See id. One of these restrictions, commonly known as the "three strikes provision," prohibits prisoners with "three strikes" from taking advantage of 28 U.S.C. 1915(a)(1), the federal in forma pauperis statute, which authorizes a waiver of the fees for filing an action or appeal in federal court; a prisoner receives a "strike" each time a federal court dismisses one of the prisoner's actions or appeals as frivolous, as malicious, or for failure to state a claim. See PLRA 804(d), 110 Stat. at 1374-75 (adding 28 U.S.C. § 1915(g)). This provision has four key components in the sense that: (a) it only applies to prisoners; (b) it applies to civil actions and appeals; (c) it applies when the prisoner has "three strikes"; and (d) it does not apply if the prisoner "is under imminent danger of serious physical injury."[18] 40 28 U.S.C. § 1915(g). All circuit courts that have addressed the constitutionality of the provision have upheld the provision against constitutional challenges, and the United States Supreme Court invariably denied certiorari to

---

[18] The exact language of the "three strikes provision" reads as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Notably, to qualify for the imminent danger exception, the plaintiff must detail the nature of harm and be in imminent threat of suffering serious physical injury at the time he submits his pleadings for filing. See White v. Colorado, 157 F.3d 1226, 1232 (10th Cir. 1998) (plaintiff's use of imminent danger exception to three strikes provision is precluded because defendant failed to specify nature of harm); Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (plaintiff cannot use imminent danger exception to the "three strikes provision" if danger ceased prior to his submission of the complaint to his prison officials for mailing to the court).

challenges to the "three strikes provision."[19]  See, e.g., Higgins v. Carpenter, 258 F.3d 797 (8th Cir. 2001); Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001), cert. denied, 533 U.S. 953 (2001); Rodriguez v. Cook, 169 F.3d 1176 (9th Cir. 1999); White v. Colorado, 157 F.3d 1226 (10th Cir. 1998), cert. denied, 526 U.S. 1008 (1999); Rivera v. Allin, 144 F.3d 719 (11h Cir. 1998), cert. dismissed, 524 U.S. 978 (1998); Wilson v. Yaklich, 148 F.3d 596 (6th Cir. 1998); Carson v. Johnson, 112 F.3d 818 (5h Cir.), reh'g denied, 1997 U.S. App. LEXIS 16984 (1997).

Moreover, academic literature observed that, upon its enactment, the "three strikes provision" was merely a codification of the already long-recognized inherent court authority to curtail abusive litigation through imposition of carefully tailored injunctions against such filings. See, e.g., Randal S. Jeffrey, Restricting Prisoners' Equal Access to the Federal Courts: The Three Strikes Provision of the Prison Litigation Reform Act and Substantive Equal Protection, 49 Buffalo L. Rev. 1099, 1141 (2001).  Indeed, a federal court's inherent power to sanction abusive litigants by imposing filing restrictions is well established, see, e.g., Werner v. Utah, 32 F.3d 1446, 1447-48 (10th Cir. 1994) (per curiam); De Long v. Hennessey, 912 F.2d 1144, 1147-48 (9th Cir. 1990); Safir v. United States Lines, Inc., 792 F.2d 19, 25 (2d Cir. 1986), cert. denied, 479 U.S. 1099 (1987); see also Chambers v. Nasco, Inc., 501 U.S. 32, 44 (1991) (discussing the authority for, and scope of, the inherent powers of courts); In re McDonald, 489 U.S. 180 (1989) (per curiam) (prohibiting the petitioner from filing any additional extraordinary writs in forma pauperis), and federal courts have long controlled overly litigious and abusive pro se litigants by injunctions limiting future filings.[20]

-------

[19] In so ruling, the courts utilized, inter alia, the following reasoning: (a) the interests that the litigants challenging the provision sought to vindicate through filing the cases were not fundamental, see Rodriguez, 169 F.3d at 1180; White, 157 F.3d at 1233-34; Rivera, 144 F.3d at 724; Carson, 112 F.3d at 821; (b) an alternative remedy to the federal courts was available, namely the prisoner could bring a case in state court, see Abdul-Akbar, 239 F.3d at 318; Wilson, 148 F.3d at 605; see also Rivera, 144 F.3d at 724 n.9; (c) the prisoner challenging the provision lacked actual injury, see White, 157 F.3d at 1234; (d) the ability to pursue civil actions is subject to congressional limitation, since proceeding in forma pauperis in civil actions is a privilege, not a right, see Abdul-Akbar, 239 F.3d at 317; Rodriguez, 169 F.3d at 1180; White, 157 F.3d at 1233; Rivera, 144 F.3d at 723; and (e) the "imminent danger" exception guarantees that prisoners with claims implicating fundamental interests actually are able to raise such claims in federal court.  See Higgins, 258 F.3d at 800; Abdul-Akbar, 239 F.3d at 319; White, 157 F.3d at 1234.

[20] In 1989, basing its conclusions on this judicial practice, the Supreme Court — having its fair share of abusive litigants — entered its first order prospectively denying pauper status to an indigent petitioner.  See In re McDonald, 489 U.S. 180, 180 (1989).  The Court subsequently has entered similar orders against other abusers.  See, e.g., Attwood v. Singletary, 516 U.S. 297 (1996) (per curiam) (ten petitions in one year); In re Sassower, 510 U.S. 4, 4, 114 S. Ct. 2, 126

Furthermore, the court's inherent power to control abusive litigation of individuals whose litigious activities fall outside the scope of the "three strikes" provision is not limited to civil rights actions challenging incidents of prison life. See, e.g., Butler v. DOJ, 492 F.3d 440 (D.C. Cir. 2007) (affirming the lower court's decision to utilize its supervisory discretion by denying the prisoner in forma pauperis status in a matter initiated under the Freedom of Information Act, since the prisoner had five prior appeals dismissed for failure to prosecute, had another five appeals pending, was a party to five other suits, and — in each of these actions — raised largely the same challenges while filing the same range of documents); see also Hurt v. SSA, 544 F.3d 308, 310 (D.C. Cir. 2008) (where the litigant brought numerous cases alleging various wrongs by government actors and agencies, judges and courts, and inanimate objects, the court held that "the number, content, frequency, and disposition" of a litigant's filings show an especially abusive pattern warranting denial of [in forma pauperis] status prospectively"); accord Mitchell v. Fed. Bureau of Prisons, 587 F.3d 415 (D.C. Cir. 2009) (where the litigant, technically, had only two "strikes" but employed litigation practices that abused his privilege of proceeding in forma pauperis (by making a multitude of filings that were vague and unspecific), the court found that he was subject to prospective measures limiting his ability to proceed in forma pauperis).[21] . . .

---

L. Ed. 2d 6 (1993) (per curiam) (eleven petitions in three years, plus ten more during 1993); Day v. Day, 510 U.S. 1, 2 (1993) (per curiam) (twenty-seven petitions in nine years). In 1991, the Court amended Rule 39.8 of the Rules of the Supreme Court of the United States to read as follows: "If satisfied that a petition for a writ of certiorari, jurisdictional statement, or petition for an extraordinary writ, as the case may be, is frivolous or malicious, the Court may deny a motion for leave to proceed in forma pauperis." In re Amendment to Rule 39, 500 U.S. 13, 14 (1991).

[21] These decisions were rendered with regard to the matters instituted by individuals who proceeded pro se and, in addition, sought in forma pauperis status: as [the plaintiff] did in [his three actions instituted in this District]. However, the power of the judiciary to limit abusive filings is not limited to such matters only: it applies to any matter where an abusive litigant is unable to control his/her client's litigation urges. The Court of Appeals for the Third Circuit expressly guided that, in such cases:

"a pattern of groundless and vexatious litigation will justify an order prohibiting further filings without permission of the court." Chipps v. U.S. District Court for the Middle District of Pa., 882 F.2d 72, 73 (3d Cir. 1989). In addition, a District Court has the authority to issue limitations on pro se filings submitted while the party is represented by counsel. See United States v. Vampire Nation, 451 F.3d 189, 206 n.17 (3d Cir. 2006) [*142] (citing United States v. Essig, 10 F.3d 968, 973 (3d Cir. 1993)). Here, the District Court [repeatedly] enjoined [the represented litigant's] pro se filings, but to no avail. To the extent that the District Court must take additional steps to effectuate its injunction, [and] we encourage it to do so.

[Here, the] Court recognizes that [the plaintiff's] inability to control his litigious urges clogs the dockets in this District and requires judicial intervention.  Simply put, this Court, in exercise of its supervisory discretion, finds it necessary to enter a limited order of preclusion that helps [the plaintiff's] to: (a) avoid repetitious filings, (b) carefully and thoughtfully select his claim; and (c) reduce these claims to clear and concise statements free from needless commentary that reduces the value of his submissions.  Cf. Llarena v. Kinkos, 05-3410 (JBS), Docket Entry No. 2 (a standing order issued by Honorable John W. Bissell, then Chief Judge of this District, upon taking notice of abusive litigation practices displayed by a pro se plaintiff in a civil matter presided by Honorable Jerome B. Simandle; the order directed the plaintiff to show cause as to why the plaintiff should not be barred from filing any document without leave of court and, in addition, mandating the Clerk not to accept any document of any kind from the plaintiff except for the plaintiff's response to Judge Bissell's order).

Telfair, 2010 U.S. Dist. LEXIS 110681, at *133-45 (original footnotes preserved for Hoffenberg's

guidance, emphases removed).  This Court, therefore, finds it entirely appropriate and prudent to

impose a narrowly-tailored order of preclusion against Hoffenberg.

Consequently, for the purposes of Hoffenberg's future actions in this District, if Hoffenberg

wishes to file a civil complaint pro se and seek in forma pauperis status (or if Hoffenberg wishes to

file a pro se habeas petition), Hoffenberg will be directed to:

a.   seek leave from the acting Chief Judge of this District to initiate any such matter.[22]

---

United States v. D'Amario, 328 Fed. App'x 763, 764 (3d Cir. 2009).

[22]  If Hoffenberg has problem visualizing such application for leave to file a new action, this Court provides Hoffenberg with the following examples:

1.     In the event Hoffenberg wishes to file a civil complaint, his application seeking leave to initiate such action could read, for instance, as follows: "To the Chief Judge of the U.S. District Court for the District of New Jersey.  Pursuant to a limited order of preclusion imposed in Civil Action 09-4784, I am seeking leave to file a pro se Bivens civil complaint and proceed in forma pauperis.  I wish to assert that I suffered a physical injury.  I contacted a certain defendant such-and-such for help but was denied medical attention.  The aforesaid defendant stated that (s)he would not assist me with my injury for some reason.  As of the date of this submission, my injury has not been attended.  I aver as to my bona fide belief that these facts amount to a viable claim under the

Hoffenberg's applications for leave to initiate each such action shall:

i.      be reduced to a one-page, single-sided document;

ii.     include a statement wherein Hoffenberg shall aver, under penalty of perjury, that the

        pleading Hoffenberg seeks leave to file would raise factual allegations that were not

        raised in this District or in any other court at any time in the past and, in addition,

        that these allegations appear to amount to bona fide claims in light of the guidance

        that was provided to Hoffenberg by any judge in this District or by any other court

        at any

         time prior to Hoffenberg's execution of his application for leave to file a new

pleading; and

iii.    summarize the nature and facts of the allegations that Hoffenberg intends to raise in

        his pro se pleading, if permission to file is granted.  Such summary should be

        reduced to clear and concise language not exceeding two hundred words.[23]  No

        generalities, or statements that are expressions of displeasure, threats of

_____

guidance provided to me by the courts in my prior actions."

2.      In the event Hoffenberg wishes to file a habeas petition, his application seeking leave to
        initiate such action could read, for instance, as: "To the Chief Judge of the U.S. District
        Court for the District of New Jersey.  Pursuant to a limited order of preclusion imposed in
        Civil Action 09-4784, I am seeking leave to file a pro se § 2241 habeas petition.  I wish
        to assert that, on a certain date, I submitted an application to be considered for placement
        in home confinement pursuant to the pilot program of the Second Chance Act.  My
        application was denied by the warden, the Regional Office of the BOP and the Central
        Office of the BOP.  I am over 65 years old, and I have already served 75% of the
        sentence imposed upon me.  I aver as to my bona fide belief that these facts amount to a
        viable claim under the guidance provided to me by the courts in my prior actions."

[23]  The phrase "two hundred words" refers to all words, regardless of their length or their
grammatical qualification, i.e., it includes all articles, prepositions, nouns, verbs, adjectives, etc.

congressional wrath, threats of media coverage or the like will be deemed a valid

summary.

b.     In the event the Chief Judge grants Hoffenberg such leave, Hoffenberg shall file a bona fide

clear and concise pleading by either utilizing one of this Court's pre-printed forms (*without*

*adding any pages, and without any writing on the back of the pre-printed pages*) or by

preparing his own submission which is: (I) substantively identical, in its format, to the

Court's pre-printed form; and (ii) not exceeding fifteen pages, single sided, double-spaced,

utilizing a 12-point common letter font[24] and having margins no less than one inch on each

side.  Hoffenberg's failure to either seek leave to file such pro se pleadings or Hoffenberg's

failure to comply with the aforesaid format requirements will result in the Clerk's docketing

of Hoffenberg's submission, accompanying such docket entry with a notation, reading

"PURSUANT TO THE LIMITED ORDER OF PRECLUSION ENTERED IN CIVIL

ACTION NO. 09-4784, THIS ENTRY IS DEEMED STRICKEN FROM THE DOCKET

BECAUSE OF THE PRO SE LITIGANT'S FAILURE TO COMPLY WITH THE

REQUIREMENTS SET FORTH IN THAT ORDER OF PRECLUSION.  THE CONTENT

OF THIS SUBMISSION WILL NOT BE CONSIDERED BY THE COURT" and

administratively terminating the matter.

The Court notes that Hoffenberg's emergent future civil complaints are expressly exempt

from the reach of the aforesaid preclusion measure. The Court, however, emphasizes that such

exemption **applies *only* to civil rights complaints in which Hoffenberg asserts bona fide claims**

---

[24]  Hoffenberg must either utilize such common fonts as Arial, Courier New, Times New Roman, etc., or simply hand-print in an analogously-looking lettering.  No extra-narrow font will be tolerated.

**and details facts** *clearly evincing that Hoffenberg is experiencing imminent and ongoing danger to his life* (**or imminent, ongoing and** *truly serious* **danger to his health**).[25]   In the event Hoffenberg is experiencing such danger to his life or health, he may submit his pro se pleading and his duly executed application to proceed in forma pauperis without seeking the Chief Judge's leave to make such submission, *but only if* Hoffenberg:

a.   Accompanies such submission by a statement whereas Hoffenberg shall aver, under penalty of perjury and other sanctions that might be imposed by the court, that the pleading Hoffenberg seeks to file raises factual allegations that were not raised in this District or in any other court at any time in the past, regardless of whether these claims or allegations were already addressed by any court or are still pending before any court; and,

b.   Reduces his pleading to a document not exceeding fifteen pages, single sided, double-spaced, utilizing a 12-point common letter font 48 and having margins no less than one inch on each side, i.e., to a document expressly complying with the requirements detailed supra.

c.   Hoffenberg's failure to comply with these requirements will result in the Clerk's docketing of Hoffenberg's submission, accompanying such docket entry with a notation, reading

---

[25]   To that extent, the Court stresses that speculative claims about potential danger (e.g., speculations about potential animus on the part of other inmates or prison officials, etc.,) *cannot* suffice, just as assertions based on circumstances not presenting a serious danger to Hoffenberg's health (e.g., assertions based on Hoffenberg's age, anxieties, dietary restrictions, emotional distress, head cold, unsanitary conditions, limitations on stamp purchases, etc.) would not suffice.  Conversely, claims asserting, for instance, facts clearly evincing complete denial of medical care for such conditions as already-diagnosed cancer, already-diagnosed hepatitis C, or analogously *grave health threats*, would qualify as emergent.  Hoffenberg's attempts to "creatively" bend this limited exemption will be deemed contempt of the court and, if appropriate, might result in amplification of the limited preclusion measures being currently imposed by this Court.

"PURSUANT TO THE LIMITED ORDER OF PRECLUSION ENTERED IN CIVIL ACTION NO. 09-4784, THIS ENTRY IS DEEMED STRICKEN FROM THE DOCKET BECAUSE OF THE PRO SE LITIGANT'S FAILURE TO COMPLY WITH THE REQUIREMENTS SET FORTH IN THAT ORDER OF PRECLUSION.  THE CONTENT OF THIS SUBMISSION WILL NOT BE CONSIDERED BY THE COURT" and administratively terminating the matter.

**V.**    **Conclusion**

For the foregoing reasons, Hoffenberg's fourth amended complaint, Docket Entry No. 59, will be dismissed.  Such dismissal will be with prejudice, and will count as a "strike" for the purposes of the "three-strike rule."  The Court will expressly withdraw its jurisdiction over this matter, hence ripening it for appeal.  Hoffenberg will be directed not to make any further filings in this matter except for his notice of appeal, that is, in the event Hoffenberg desires to seek appellate review of this decision.  A limited preclusion measure will be imposed against Hoffenberg in accordance with the terms detailed supra.

An appropriate Order accompanies this Opinion.


s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**


Dated: January 14, 2011