UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN JUDE HOFFENBERG, | |
| Plaintiff, | Civil Action No. 09-4784 (RMB) |
| v. | **MEMORANDUM OPINION** |
| JEFF GRONDOLSKY et al., | **AND ORDER** |
| Defendants. | |

This matter comes before the Court upon Plaintiff's submission of his response to the Court's order to show cause as to why a limited order of preclusion should not be imposed against Plaintiff, and it appears that:

1. On September 21, 2009, the Clerk docketed Plaintiff's complaint in this matter. See Docket Entry No. 1. The complaint consisted of a 100-page submission (371 essentially incomprehensible paragraphs), arrived accompanied by Plaintiff's application to proceed in this matter in forma pauperis. See id.

2. On September 30, 2009, this Court issued a memorandum opinion and order granting Plaintiff in forma pauperis status and dismissing the complaint, without prejudice, for failure to comply with the requirements of Rules 8, 18 and 20. See Docket Entry No. 2. The Court also directed the Clerk to serve Plaintiff with a blank civil complaint form and strongly encouraged Plaintiff to utilize the form in order to control the volume and content of his amended pleading. See id. at 13 and n.2.

3. In response, Plaintiff filed not an amended complaint, but a host of motions. See Docket Entries Nos. 3, 4, 6 and 7.

4. On October 14, 2009, and November 5, 2009, the Court denied Plaintiff's motions and extended his time to file his amended complaint. See Docket Entries Nos. 4 and 8.

5. On November 16, 2009, Plaintiff filed his amended complaint, accompanied by another set of motions. See Docket Entries Nos. 10, 11, 12, 13, 14, 15 and 16. The amended complaint presented a copy of Plaintiff's original complaint (i.e., the very same 371-paragraph narrative consisting of conclusory statements) made even less understandable by Plaintiff's numerous handwritten comments entered between the lines and/or on margins. See Docket Entry No. 10.

6. On December 17, 2009, the Court issued a memorandum opinion and order dismissing the amended complaint for failure to comply with the requirements of Rules 8, 18 and 20, and denying Plaintiff's second round of motions. See Docket Entry No. 18. In addition, the Court deciphered two claims in that complaint and dismissed these claims with prejudice, granting Plaintiff leave to amend as to the remainder. See id. In the process of addressing Plaintiff's claims, the Court re-detailed to Plaintiff the pleading requirements of Rule 8, as explained by the Supreme Court in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and by the Court of Appeals in Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009), and Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). The Court's order concluded with an unambiguous directive: that Plaintiff's second amended complaint had to be a clear and concise document. See id. at 13.

7. On January 5, 2010, Plaintiff filed his second amended complaint, consisting of 56-pages ( 203 paragraphs) accompanied by 39 pages of exhibits written up by Plaintiff between

the lines and on the margins. See Docket Entry No. 20. The relevance of these exhibits to Plaintiff's claims was incomprehensible like the content of Plaintiff's second amended complaint. See id.

8. On February 23, 2010, this Court issued another memorandum opinion and order dismissing Plaintiff's second amended complaint. See Docket Entry No. 23. Same as during its dismissal of Plaintiff's first amended complaint, the Court guessed as to certain claims that the Court could decipher and explained to Plaintiff that these allegations did not state a cognizable claim. See id. at 3, n.1. The Court's order concluded with the directive requiring Plaintiff to submit a list of legal claims which Plaintiff wished to assert, with each claim being accompanied by no more than one page of supporting facts. See id. at 3-4.

9. On March 9, 2010, Plaintiff submitted his third amended complaint. See Docket Entry No. 25. That submission included 43 pages (comprised of 150 paragraphs). See id. Disregarding this Court's prior orders, Plaintiff submitted a stream of unspecific and unrelated generalities reiterating even the claims expressly dismissed by this Court. See id.

10. On April 27, 2010, this Court issued another memorandum opinion and order. In no ambiguous terms, the Court explained to Plaintiff how to plead his claims and stressed that Plaintiff's failure to comply with this Court's guidance will necessarily result in dismissal of Plaintiff's claims with prejudice. See Docket Entry No. 26. Out of an abundance of caution, the Court allowed Plaintiff an opportunity to file his fourth amended complaint, complying with the applicable Rules. See id.

11. Six months passed after the Court's issuance of the above-detailed memorandum opinion and order. During that period, Plaintiff did not file his fourth amended complaint; rather, he filed numerous motions seeking and re-seeking this Court's recusal, as well as numerous motions demanding Plaintiff's "due process" right to file a brief, motions for declaratory relief, motions for production of evidence, motions for reconsideration, notices of appeal, notices of withdrawing appeal, etc. See Docket Entries Nos. 29-50.

12. On October 13, 2010, the Court of Appeals dismissed Plaintiff's appeal as interlocutory. See Docket Entry No. 51.

13. On October 15, 2010, this Court issued another memorandum opinion and order, reinstating Plaintiff's opportunity to file his fourth amended complaint, providing Plaintiff with extra time to execute such submission and warning Plaintiff that, in the event Plaintiff submitted an amended pleading not complying with the Rules, Plaintiff's challenges would be dismissed with prejudice, and Plaintiff would be sanctioned. See Docket Entry No. 52.

14. On October 19, 2010, Plaintiff requested a 60-day extension of time to produce his fourth amended complaint. See Docket Entry No. 55. To ensure that Plaintiff's fourth amended complaint would be a clear and concise submission, the Court granted Plaintiff a 90-day extension and reminded him that his submission had to comply with the Rules. See Docket Entry No. 56.

15. On December 21, 2010, Plaintiff submitted his fourth amended complaint, a sixty-page production consisting of 150 paragraphs of incomprehensible narratives. See Docket Entry No. 59.

16. On January 14, 2011, this Court issued a memorandum opinion and accompanying order detailing the procedural history of this matter and the diciencies of Plaintiff's fourth amended complaint. See Docket Entries Nos. 60 and 61. In accordance with the warning thrice given by this Court to Plaintiff, the Court dismissed Plaintiff's amended complaint and imposed a limited order of preclusion with regard to Plaintiff's future filings of non-emergent pro se, in forma pauperis civil complaints. See id.

17. Plaintiff appealed. See Docket Entries Nos. 64 and 65.

18. On June 9, 2011, the Court of Appeals issued its decision. See Docket Entry No. 70. That decision affirmed this Court's dismissal of Plaintiff's fourth amended complaint and, specifically, this Court's dismissal of Plaintiff's claims raised against Defendants Herbik, Hood, etc., as well as this Court's denial of Plaintiff's demands for this Court's recusal. See id. The Court of Appeals decision read, in pertinent part, as follows:

> Hoffenberg is presently confined at FCI-Fort Dix in New Jersey, where he is serving a twenty-year sentence imposed by the District Court for the Southern District of New York in 1997 following his plea of guilty to conspiracy to violate the securities laws and other offenses. . . .
>
> We will summarily affirm the dismissal of Hoffenberg's fourth amended complaint with prejudice because his appeal of that aspect of the District Court's order presents "no substantial question." To the extent that certain claims for relief can be gleaned from the language of Hoffenberg's overwrought pleadings, the District Court properly concluded that he failed to state a claim upon which relief can be granted. . . . Hoffenberg's attempts at pleading were neither short nor plain, and the District Court fairly characterized them as "volumes of self-serving patchy tirades." Hoffenberg's inexplicable failure to plead in conformity with the rules, despite four chances to amend, supports the denial of further leave to amend. We conclude that the fourth amended complaint was properly dismissed with prejudice.
>
> Finally, we consider the District Court's decision to restrict Hoffenberg's right to file future suits in the District of New Jersey. We have held that

> "a continuous pattern of groundless and vexatious litigation can, at some point, support an order against further filings of complaints without the permission of the court."  Courts must remain mindful, however, that "[a]ccess to the courts is a fundamental tenet of our judicial system," and "legitimate claims should receive a full and fair hearing no matter how litigious the plaintiff may be."  Significantly for purposes of the present case, we have explained that an injunction against future filings "should not be imposed by a court without prior notice and some occasion to respond."  The District Court here gave notice to Hoffenberg that his failure to plead in compliance with the Rules of Civil Procedure would result in "sanctions."  But the District Court did not afford notice of the particular [limited preclusion] order that it intended to enter placing restrictions upon Hoffenberg's right to file suit.  As a result, Hoffenberg did not have an opportunity to object before the order was entered. As we have explained, "[i]f the circumstances warrant the imposition of an injunction, the District Court must give notice to the litigant to show cause why the proposed injunctive relief should not issue. This ensures that the litigant is provided with the opportunity to oppose the court's order before it is instituted."  Given the absence of proper notice here, we will vacate the injunction imposed and remand so that Hoffenberg can be afforded an opportunity to respond.  We express no view on whether Hoffenberg's conduct, in this case or in the others cases cited by the District Court, would support entry of an order restricting his right to file future litigation.  That issue is best left to the District Court in the first instance, in the sound exercise of its discretion, after it considers Hoffenberg's objections and weighs them against the record and the need to curtail potentially abusive future litigation.  We do note that "Hoffenberg has had a history of mental illness dating back to a hospitalization in 1970, which included electro-convulsive therapy, anti-psychotic medications such as thorazine, and the mood stabilizer lithium. He was diagnosed at that time as manic depressive."  There is no record before this Court as to whether Hoffenberg's mental health offers any explanation for his actions in this proceeding, or in the two other proceedings that the District Court cited as evidence of his "abuse of legal process" in the District of New Jersey.  We leave it to the District Court to determine whether Hoffenberg's mental health is at all relevant or should have any bearing on whether to restrict his right to file future litigation.

Hoffenberg v. Bumb, 2011 U.S. App. LEXIS 11741 (3d Cir. June 9, 2011) (citations and

parenthetical explanations omitted, footnote 4 incorporated in the main text).

19. The Court of Appeals' mandate was entered on August 2, 2011.  See Docket Entry No. 73.  On August 19, 2011, this Court issued an order reciting to Plaintiff the terms of its limited order of preclusion already stated in this Court's previous order.  This Court also directed Plaintiff to show cause as to why this limited order of preclusion should not be entered against him.   See Docket Entry No. 74.

20. On August 25, 2011, Plaintiff moved this Court for an extension of time to submit his response to the Court's order to show cause, see Docket Entry No. 78; Plaintiff's motion to that effect was granted.  See Docket Entry No. 79.

21. On November 9, 2011, the Clerk received Plaintiff's submission; that submission reads, in its entirety, as follows:

>  Re     Hoffenburg v Judge Bumb et al "Appeal Mandate" Case Number 09 civ
> 4784 "Settlement Offer" in the Pending Plaintiff December 2011 Filing
> (1) the "Benefit of Justice Demands," this "Settlement Offer," in the Plaintiff December 2011, "Filing."
> (2) That the "Filing" by the Plaintiff, in December 2011, in the Open Remand Mandate, Should Be Settled as "Case Closed," with "No Further," Plaintiff December 2011 Filing.
> (3) That the Dec 2011 Filing, must "Target," the Plaintiff DOJ Turnover, in Major Evidence, Showing the Plaintiff Partner Jeff Epstein, "Massive Multi Billion Dollar Hedge Fund Crimes."
> (4) "Newsweek" Was Requested by "DOJ," to Delay, the Ready to Publish Story, Showing the Plaintiffs Part, in Turning over Evidence, in the Plaintiffs Billionaire Partner, Jeff Epsteins, "Multi Billion Dollar Hedge Fund Crime(s)."
> (5) That the Instant Suit, Prison BOP Defendant Staff Richard Herbik, the Plaintiff Unit Team Mgr., Was "Removed," on May 5, 2011, from That Position.
> (6) That the Instant Suit, Prison Bop Defendant, Ms Hood, the "Plaintiff Counselor," at the "Prison Unit Team," Was "Removed" from Her Position, with the Plaintiff.
> (7) That the Prison Staff, in the "Instant Suit," Are under "Bop Investigation."
> (8) That the Appeals Court Opinion "Ruling," Made, the "Substantial Fact Record Error," Below.

 (9) That Judge Bumb, "Dismissed" Without "Prejudice," the Plaintiffs First Amended Complaint. "Wrong Point."
 (10) That the Judge Bumb First Amended Complaint, "Order" Was "Dismissed" with "Prejudice," in Said Lower Court Opinion, That the Appeals Court "Opinion," Was "Wrong," in the "Mandate Remand," in The, "With Prejudice, Dismissal by Judge Bumb." See, "Many Judge Bumb," Prison Suits, "Dismissed" with "Prejudice."
 (11) That the "Basis," for the Instant "Sanction," Was the Plaintiffs, (3) Three Pro Se Law Suit, "Ruling(s)," in this Court House.
 (12) That the Plaintiff Did Appeal, "(2) Two," of the "Three," Pro Se above Law Suits.
 (13) That the Plaintiff "Won" the "Appeal," in the "$20 Billion Dollar," FTCA, Tort USA/BOP Lawsuit, in this "Court House."
 (14) That the Plaintiff "Third" Lawsuit, in the Judge Bumb "Basis," for this "Sanction," Was the "2241" Lawsuit, Petition, for "Pre Release, Plaintiff Credit."
 (15) That Said "Credit," Will Very Soon, Be "Provided," to the Plaintiff.
Conclusion
 (1) "Wisdom" Mandates That, this Suit Be Marked "Closed," on the "Docket," with "No Further" Plaintiff, December 2011, "Filing."
 (2) this "Settlement Offer," Is "Not Part of the Docket."

Docket Entry No. 82 (quotation marks, capitalization, punctuation and lack thereof in original, underlining removed).

22. As it is appears from Plaintiff's above-quoted submission, Plaintiff is now trying to relitigate – once again – his claims against Defendants Herbik and Hood that were already dismissed by this Court (and which dismissal was affirmed by the Court of Appeals), as well as this Court's determination that its recusal was unwarranted (which determination was, too, affirmed by the Court of Appeals). See id. Paramountly here, no statement in Plaintiff's submission provides this Court with a single reason to avoid imposition of the limited order of preclusion. See id. In light of the foregoing, imposition of the limited order of preclusion is warranted.

23. Finally, pursuant to the Court of Appeals' guidance in <u>Hoffenberg v. Bumb</u>, 2011 U.S. App. LEXIS 11741, this Court examined Plaintiff's criminal proceedings conducted at the United States District Court for the Southern District of New York ("SDNY"), which produced a reference to Plaintiff's mental health problems experienced in the past, as well as Plaintiff's actions other than those already discussed by this Court in its January 14, 2011, decision, Docket Entry No. 60 (which reflected on the litigations Plaintiff instituted in this District during the past two years).

> The charges to which [Plaintiff] pleaded guilty principally relate[d] to his conduct as the chief executive officer, president and chairman of the board of Towers Financial Corporation ("Towers"). For example, [Plaintiff] and his co-conspirators made fraudulent representations in connection with the sale of more than $ 270 million in promissory notes for Towers and the sale of $ 210 million in bonds for a related entity. In or about 1989, the SEC began an investigation of the fraudulent sale of Towers' securities. [Plaintiff] intentionally testified falsely in several SEC depositions and directed Towers employees and associates to testify falsely during the SEC investigation.
>
> [Plaintiff] also participated in an entirely separate fraudulent scheme in Illinois whereby he misappropriated and misused more than $ 3 million of funds and bonds belonging to two Illinois-based insurance companies controlled by Towers. [Plaintiff] was indicted for this conduct in the Northern District of Illinois and the indictment was transferred to [the S.D.N.Y.] pursuant to Rule 20 of the Federal Rules of Criminal Procedure. [Plaintiff's] guilty plea included a plea to one count of mail fraud in connection with the scheme he perpetrated in Illinois.
>
> [Plaintiff] also evaded personal income taxes for the years 1987 through 1991 by causing a number of his personal expenses to be paid by a corporation he owned. As a result, he avoided paying approximately $ 668,280 in income taxes.
>
> On or about September 23, 1993, [Plaintiff] entered into an agreement with the Government (the "Cooperation Agreement"), pursuant to which he agreed, among other things, to plead guilty to certain charges and to cooperate with the Government's investigation. The Government subsequently advised [Plaintiff] that he had breached the Cooperation

>Agreement by concealing assets and his interest in two companies. [Plaintiff] sought to enforce specific performance of the Cooperation Agreement. [The SDNY] denied [Plaintiff's] motion [to that effect].

Hoffenberg v. United States, 2010 U.S. Dist. LEXIS 40495, at *1-5 (S.D.N.Y. Apr. 26, 2010) (subheadings and citations to previous decisions by the S.D.N.Y. and N.D. Ill. omitted).

>On March 7, 1997, [the SDNY] sentenced [Plaintiff] to twenty years imprisonment . . . as well as a $ 1 million fine, approximately $ 475 million in restitution, and a $ 50 special assessment on each of the five counts. [Plaintiff] appealed his criminal conviction and sentence and, on September 22, 1998, the Second Circuit affirmed . . . . [Plaintiff, who filed a litany of actions challenging his conviction on multiple bases, had all his applications to that effect dismissed by the S.D.N.Y., the Second Circuit and the Supreme Court; he] is currently incarcerated and serving his sentence.

Hoffenberg v. United States, 436 F. Supp. 2d 609, 610 (S.D.N.Y. 2006).

During the sentencing stage of Plaintiff's criminal prosecution in the S.D.N.Y., Plaintiff's trial judge observed that

>[Plaintiff] has had a history of mental illness dating back to a hospitalization in 1970, which included electro-convulsive therapy, anti-psychotic medications such as thorazine, and the mood stabilizer lithium. He was diagnosed at that time as manic depressive. . . . In March 1995, [Plaintiff] was taking . . . prescription medications [such as] clonazepan (Klonopin) . . . . On April 7, 1995, [Plaintiff's] dosage of Klonopin was increased, and he was prescribed fluoxereine (Prozac) . . . . [Also, in March 1995, Plaintiff was] diagnosed . . . as suffering from a Probable Bipolar II Disorder and a Mixed Personality Disorder, with a global assessment of functioning of 40 out of a scale of 100.

United States v. Hoffenberg, 1997 U.S. Dist. LEXIS 2394, at *29-30 (S.D.N.Y. Mar. 4, 1997).

It appears that, following his conviction, Plaintiff was incarcerated, inter alia, in New Jersey, Pennsylvania and Massachusetts, and filed numerous legal actions during

each period of his incarceration. See, e.g., Hoffenberg v. Fed. Bureau of Prisons, 2004 U.S. Dist. LEXIS 19424 (D. Mass. Sept. 14, 2004), and Civ. Action No. 03-40226 (D. Mass). Addressing Plaintiff's challenges raised in his District of Massachusetts ("D. Mass.") action, Judge George A. O'Toole ("Judge O'Toole") detailed Plaintiff's allegations and dismissed Plaintiff's claims, reasoning as follows:

> After careful consideration of the parties' [positions,] I conclude that judgment ought to be granted for the defendants on the plaintiff's . . . claims, . . . namely . . . the Bivens claims[, the] Federal Tort Claims Act ("FTCA") claims . . . and . . . claims for violation of 28 C.F.R. §§ 540.103 and 545.10.
> . . .
> The only constitutional rights even remotely implicated . . . appear to be the right to counsel and the right of access to the courts, neither of which provides any basis for a claim in the circumstances pleaded. The right to counsel under the Sixth Amendment is limited to the defense of criminal prosecutions and is not applicable to the plaintiff's pursuit of civil actions for damages. The constitutional right of access to the courts is also narrow in scope and does not give the plaintiff a constitutional right to the assistance of counsel in civil cases. Rather, it is limited to appeals from criminal convictions, petitions for habeas corpus, and civil rights actions. Furthermore, the right of access to courts does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. Nor does it enable prisoners to litigate with maximum effectiveness once in court. [Plaintiff] does not here challenge either his sentence or the physical conditions of his confinement. Instead he claims that limiting the extent of his telephone calls within any given month prevents him from retaining and using his attorney's services to help him collect, via various lawsuits, money he could use to pay the restitution imposed by his criminal judgment. Assuming arguendo that the limitation on [Plaintiff's] telephonic access to counsel could be a considered a condition of confinement, it is nonetheless far too insubstantial a limitation to amount to a constitutional deprivation remediable under Bivens. At the very least, such a proposition has not been clearly established, and the defendants would be entitled to qualified immunity as to such a claim.
> . . .
> Giving [Plaintiff] the full benefit of the doubt on the issue of exhaustion, he still does not state a cause of action under the FTCA because the

> asserted prison regulations and policy statements do not create a legal right enforceable in an action for damages and [Plaintiff] provides no other substantive, viable source for his FTCA claims. The regulations at issue here, 28 C.F.R. §§ 540.103, 543.12, and 545.10, relate to the institutional management of the Bureau of Prisons and regulate the conduct of its employees. On their face, they do not provide for a private right of action and there is no indication that Congress intended them to create an implied private right of action. [Plaintiff's] putative [federal] tort claims are also not actionable under the FTCA, and he has failed to plead and prove a source of substantive liability under state tort law.
> . . .
> For the foregoing reasons, . . . I grant judgment for the defendants dismissing all of the plaintiff's claims against them.

Hoffenberg v. Fed. Bureau of Prisons, 2004 U.S. Dist. LEXIS 19424, at *2-6 (citations, quotation marks, parenthetical explanations and subheadings omitted). By the time Judge O'Toole dismissed Plaintiff's D. Mass. action, Plaintiff was already maintaining a multitude of other legal action. One of these actions was his appeal to the Court of Appeals from the dismissal rendered by the Western District of Pennsylvania ("W.D. Pa."). Affirming the decision reached by the W.D. Pa., the Court of Appeals stated:

> In 2002, [Plaintiff] filed this action pursuant to 42 U.S.C. § 1983 and . . . the Federal Tort Claims Act . . . . [Plaintiff's] amended complaint allege[d] numerous violations of his constitutional rights under the First, Fifth, and Eighth Amendments, as well as an FTCA claim. The amended complaint also asserts that, as part of his sentence, [Plaintiff] was ordered to pay restitution totaling $ 475 million to the 100,000 victims of his financial crimes. Many of [Plaintiff's] claims are related to his contention that [Defendants, who were officials employed at the F.C.I. McKane and, potentially, officials employed at the F.C.I. Allenwood] frustrated his efforts to fulfill this court-ordered obligation by impeding his attempts to conduct collections litigation from within prison. . . . [Defendants] filed a motion to dismiss [Plaintiff's] amended complaint for failure to state a claim, or, in the alternative, for summary judgment, arguing that many of [Plaintiff's] claims were not administratively exhausted . . . . [Defendants] further argue[d] that the few exhausted claims failed to state a claim for which relief could be granted. . . . [T]he District Court dismissed all but

> [Plaintiff's] retaliation claims . . . . [Plaintiff] then filed a second amended complaint which addressed his retaliation claims in more detail. [Defendants] again moved for dismissal or summary judgment, on the same grounds [and] the District Court . . . granted summary judgment [as to] the retaliation claims. [Plaintiff] appeal[ed].
> . . .
> The District Court dismissed [Plaintiff's] first amended complaint in part, for failure to state a claim. The court held that [Plaintiff's] collections litigation cannot form the basis of a First Amendment access to courts claim, as it does not challenge either the validity of [Plaintiff's] sentence or conviction or his conditions of confinement. . . . As to the claim that Appellees violated Hoffenberg's due process rights by placing him in disciplinary confinement, the court held that Hoffenberg failed to show that this placement constituted an "atypical and significant hardship" under Sandin v. Conner, 515 U.S. 472 (1995). We agree with the District Court's dismissal of these claims on the merits . . . .
> . . .
> The District Court dismissed [Plaintiff's] FTCA claim as unexhausted . . . . In his objections to [such dismissal, Plaintiff] argue[d] that, by amending his complaint after the conclusion of the BOP proceedings, he had essentially re-filed his federal suit, thus fulfilling the FTCA's exhaustion requirement. The District Court properly rejected this argument . . . .
> . . .
> [Plaintiff also] raises numerous claims under Biven . . . , including that various [Defendants] participated in cover-ups of BOP staff misconduct, instituted baseless disciplinary proceedings against him, and twice physically assaulted him. We have reviewed the record, including exhibits consisting of BOP records detailing [Plaintiff's] administrative remedy filings, and agree with the District Court that [Plaintiff] failed to exhaust these claims . . . . [Plaintiff's] conclusory statements to the contrary are insufficient to overcome [Defendants'] well-supported motion for summary judgment. [Plaintiff also] assert[ed] that [Defendants] retaliated against him for filing civil rights lawsuits against BOP staff at both FCI-McKean and FCI-Allenwood . . . . According to [Plaintiff], this retaliation occurred when [Defendants] seized and restricted his access to his legal files, restricted his access to the administrative remedy process, and carried out unjustified disciplinary actions against him. For the reasons given by the District Court, the evidence in the record supports summary judgment in favor of Defendants on the merits of these retaliation claims.

Hoffenberg v. Provost, 154 Fed. App'x at 309-311 (also affirming dismissal on merits of

these and all other claims).

24. In sum, the only two points that appear certain are: (a) the fact that the SDNY made an observation that Plaintiff suffered a mental condition only during 1970-95, see United States v. Hoffenberg, 1997 U.S. Dist. LEXIS 2394, at *30; and (b) the fact that this observation was available for judicial notice since March 4, 1997, that is, since the date when the SDNY issued its sentencing decision with regard to Plaintiff's criminal proceedings. There is no statement in the SDNY record indicating or even suggesting that Plaintiff lacked the mental capacity to stand trial and to enter a guilty plea for the purposes of his SDNY criminal prosecution conducted in 1996-97.[1] Moreover, in 2004, that is, seven years after Plaintiff's criminal proceedings in the SDNY were over, Judge O'Toole dismissed Plaintiff's pro se civil action on the merits, without making any allowances that might be interpreted as indicative of Judge O'Toole's belief that Plaintiff suffered a mental incapacity necessitating "special" treatment of Plaintiff's legal actions. Furthermore, the same situation existed before and after Judge O'Toole's ruling, since:

---

[1] During his SDNY criminal prosecution, Plaintiff pled guilty but then, shortly thereafter, changed his defense counsel and sought to withdraw his plea agreement. In connection with that application, and upon request of that new counsel, Plaintiff was examined by psychiatrists. See USA v. Hoffenberg, Crim. Action No. 94-213 (RWS) (SDNY), Docket Entries Nos. 54-57. The psychiatric findings allowed Judge Robert W. Sweet ("Judge Sweet"), who presided over Plaintiff's prosecution, to sentence Plaintiff on the basis of Plaintiff's plea. On appeal, the Second Circuit found that Plaintiff's plea "constituted a deliberate, intelligent choice." Hoffenberg, 1998 U.S. App. LEXIS 24462, at *2 (2d Cir. Sept. 22, 1998). The same rationale was employed by the state court, which imposed a criminal sentence upon Plaintiff *during the height of Plaintiff's mental treatment, addressing the offense committed during that period*. See Hoffenberg, 1997 U.S. Dist. LEXIS 2394, at *29 ("Hoffenberg has one prior conviction for a criminal offense. In 1971, Hoffenberg plead guilty to attempted grand larceny in New York County Supreme Court . . . and was sentenced to five years probation and restitution. Hoffenberg's conviction arose out of the theft of a diamond ring valued at $ 10,500 from an employee of a jewelry store. Hoffenberg requested the ring be independently appraised, and accompanied the employee to the appraiser. Hoffenberg's co-conspirator then demanded the ring under threat") (citation omitted).

(a) in 2002, the W.D. Pa. Dismissed Plaintiff's pro se civil action on merits; (b) the very same approach was adopted by the Court of Appeals in 2005, that is, for the purposes of Hoffenberg v. Provost, 154 Fed. App'x 307.  Finally, in 2006, the Supreme Court of the United States also adopted the very same approach, see Hoffenberg v. Provost, 549 U.S. 943 (2006), dismissing Plaintiff's pro se application.  In other words, at all times during Plaintiff's criminal prosecution and thereafter, the Supreme Court, the Court of Appeals for the Third Circuit, W.D. Pa., D. Mass. and the state court (where Plaintiff's theft of a diamond ring was adjudicated) implicitly found Plaintiff competent to conduct his legal affairs: this is so because all these courts resolved Plaintiff's civil claims (and criminal challenges filed against Plaintiff) *on the merits, without appointing Plaintiff a guardian*, even though the observation of the SDNY as to Plaintiff's mental health issues was readily available for judicial notice by any of these courts.[2]  In accord with the approach adopted by these courts, this Court concludes that Plaintiff's mental health issues experienced years ago should not affect this Court's current determination as to imposition of a limited order of preclusion against Plaintiff.  This Court is in no position to assess Plaintiff's current state of mental health on the basis of the record in this matter,

---

[2] Pursuant to Rule 17(c)(2), "[t]he court must appoint a guardian ad litem – or issue another appropriate order – to protect a[n] . . . incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c)(2).  As one appellate court explained, "[w]hat the rule undoubtedly contemplates is that form of mental deficiency which . . . affects the person's practical ability 'to manage his or her own affairs.'" Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir. 1986). *A court may not dismiss on the merits the claim of an incompetent person who is not properly represented*.  See Berrios v. N.Y. City Hous. Auth., 564 F.3d 130, 135 (2d Cir. 2009).  This Court's review of Plaintiff's actions conducted before the D. Mass., W.D. Pa., the Third Circuit and Supreme Court did not locate any entry indicating that, prior to resolution of Plaintiff's claims on merits, he was appointed a guardian due to his inability to manage his legal affairs.

cf. United States v. Hoffenberg, 1997 U.S. Dist. LEXIS 2394, at *42 (where the SDNY observed that, "Hoffenberg[']s history of mental illness does not obviate the fact that he is ultimately responsible for his actions and for the consequences of those actions [since] it would be impossible to determine on this record exactly when, how and to what degree, Hoffenberg[']s mental condition affected his conduct").[3]   There is nothing in this record except for the Court of Appeals' judicial notice of a fifteen-year old observation made by the SDNY about Plaintiff's sporadic health treatment during the 1970-95 period.  The Court could not locate any action, in this District or in any other federal court, where Plaintiff applied for guardianship.  Indeed, this Court has no current evaluation by a mental health professional indicating that Plaintiff currently suffers of a mental illness that causes him difficulty functioning as a litigant.  Thus, this Court finds that a limited order of preclusion is appropriate.

IT IS, therefore, on this **30th** day of **November 2011**,

**ORDERED** that the Clerk shall reopen this matter by making a new and separate docket entry reading, "CIVIL CASE REOPENED"; and it is further

---

[3]   See also Telfair v. Tandy, 2011 U.S. Dist. LEXIS 84737, at *22-24 (D.N.J. July 28, 2011).

> This Court's mandate is limited to resolution of legal disputes; indeed, federal judges are not equipped to act as forensic psychologists distilling the root of mental impulses that might drive the parties' litigation practices.  Cf. United States v. Kim, 313 F. Supp. 2d 295, 300 (S.D.N.Y. 2004) ("Conceding that the Court has no psychiatric expertise, the Court cannot possibly conclude [what] factors add up to a significantly reduced mental capacity [of the litigant]") (internal quotation marks omitted).

**ORDERED** that a limited order of preclusion is imposed against Plaintiff in accordance with the terms of which Plaintiff was expressly advised in detail, twice. Specifically, from this point on, Plaintiff shall file an applications for leave to initiate *each* non-emergent pro se, in forma pauperis civil action of non-habeas nature, and each such application shall:

i. Be reduced to a one-page, single-sided document;

ii. Include a statement wherein Plaintiff would aver, under penalty of perjury, that the pleading Plaintiff seeks leave to file would raise factual allegations that were not raised in this District or in any other court at any time in the past and, in addition, that they appear bona fide claims in light of the guidance that was provided to Plaintiff by any judge in this District or by any other court at any time prior to Plaintiff's execution of his application for leave to file a new pleading;

iii. Summarize the nature and facts of the allegations that Plaintiff intends to raise in his pro se pleading, if permitted to file is granted. Such summary would have to be reduced to clear and concise language not exceeding two hundred words. No generalities, or statements, that are expressions of displeasure, threats of congressional wrath, threats of media coverage or the like would be deemed a valid summary; and

iv. In the event the Chief Judge grants Plaintiff such leave, Plaintiff shall file a bona fide clear and concise pleading by either utilizing one of this Court's pre-printed forms (without adding any pages, and without any writing on the back of the pre-printed pages) or by preparing his own submission which would be substantively identical, in its format, to the Court's pre-printed form, and would not exceed fifteen pages, single sided, double-

        spaced, utilizing a 12-point common letter font and having margins no less than one inch on each side.

v.    In the event Plaintiff fails to seek leave to file such pro se pleadings or if Plaintiff's fails to comply with the aforesaid format requirements, the Clerk shall docket Plaintiff's submission, accompanying such docket entry with a notation, reading "PURSUANT TO THE LIMITED ORDER OF PRECLUSION ENTERED IN CIVIL ACTION NO. 09-4784, THIS ENTRY IS DEEMED STRICKEN FROM THE DOCKET BECAUSE OF THE PRO SE LITIGANT'S FAILURE TO COMPLY WITH THE REQUIREMENTS SET FORTH IN THAT ORDER OF PRECLUSION.  THE CONTENT OF THIS SUBMISSION WILL NOT BE CONSIDERED BY THE COURT" and shall administratively terminate that matter; and it is further

**ORDERED** that Plaintiff's *emergent* future civil complaints are expressly exempt from the reach of the aforesaid preclusion measure.  Such exemption, however, shall apply only to civil rights complaints in which Plaintiff would assert bona fide claims and would detail facts clearly evincing that Plaintiff is experiencing imminent and ongoing danger to his life (or imminent, ongoing and truly serious danger to his health).  In the event Plaintiff is experiencing such danger to his life or health, he shall be allowed to submit his pro se pleading and his duly executed application to proceed in forma pauperis without seeking the Chief Judge's leave to make such submission, but only if Plaintiff:

i.    Accompanies such submission by a statement whereas Plaintiff would aver, under penalty of perjury and other sanctions that might be imposed by the court, that the pleading Plaintiff seeks to file raises factual allegations that were not raised in this

   District or in any other court at any time in the past, regardless of whether these allegations were already addressed or are still pending;

ii. Reduces his pleading to a document not exceeding fifteen pages, single-sided, double-spaced, utilizing a 12-point common letter font 48 and having margins no less than one inch on each side; and

iii. In the event Plaintiff fails to comply with these requirements, the Clerk would docket Plaintiff's submission, accompanying such docket entry with a notation, reading "PURSUANT TO THE LIMITED ORDER OF PRECLUSION ENTERED IN CIVIL ACTION NO. 09-4784, THIS ENTRY IS DEEMED STRICKEN FROM THE DOCKET BECAUSE OF THE PRO SE LITIGANT'S FAILURE TO COMPLY WITH THE REQUIREMENTS SET FORTH IN THAT ORDER OF PRECLUSION. THE CONTENT OF THIS SUBMISSION WILL NOT BE CONSIDERED BY THE COURT" and would administratively terminate that matter; and it is further

 **ORDERED** that the Clerk shall close the file this matter by making a new and separate docket entry reading, "CIVIL CASE CLOSED"; and it is finally

 **ORDERED** that the Clerk shall serve this Order upon Plaintiff by regular U.S. mail.

                s/Renée Marie Bumb
                **RENÉE MARIE BUMB,**
                **United States District Judge**